CASE NO. 21-50276

IN THE
UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

_____

Sylvia Gonzalez,

*Plaintiff – Appellee*

v.

Edward Trevino, II, Mayor of Castle Hills, sued in his
individual capacity; John Siemens, Chief of the Castle Hills
Police Department, sued in his individual capacity; Alexander
Wright, sued in his individual capacity,

*Defendants – Appellants*

*Appealed from Cause No. 5:20-cv-01151-DAE; United States District Court*
*Western District of Texas, San Antonio Division*
*The Honorable David Alan Ezra, Presiding*

_____

**RECORD EXCERPTS**

_____

Scott M. Tschirhart
smtschirhart@rampagelaw.com
Lowell F. Denton
lfdenton@rampagelaw.com
**DENTON NAVARRO ROCHA BERNAL & ZECH, P.C.**
2500 W. William Cannon Drive, Suite 609
Austin, Texas 78745
512/279-6431
512/279-6438 (Facsimile)

*Attorneys for Appellants*
**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

| **Tab** | **Document** | **Page** |
|---|---|---|
| | TABLE OF CONTENTS | ii |
| | TAB 1 - Docket Sheet, (ROA.1-5) | 1 |
| | TAB 2 - *Defendants' Notice of Appeal* (ROA.220-222) | 7 |
| | TAB 3 - *Order Denying Motion to Dismiss* (ROA.168-201) | 11 |
| | CERTIFICATE OF SERVICE | 46 |
| | CERTIFICATE OF COMPLIANCE | 47 |

# TAB 1

# U.S. District Court [LIVE]
# Western District of Texas (San Antonio)
# CIVIL DOCKET FOR CASE #: 5:20-cv-01151-DAE

| | |
|---|---|
| Gonzalez v. City of Castle Hills, Texas et al | Date Filed: 09/29/2020 |
| Assigned to: Judge David A. Ezra | Date Terminated: 04/06/2021 |
| Case in other court:  5CCA, 21-50276 (Doc. 22) | Jury Demand: Plaintiff |
| Cause: 42:1983 Civil Rights Act | Nature of Suit: 440 Civil Rights: Other |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Sylvia Gonzalez**                    represented by   **Patrick M. Jaicomo**
Institute for Justice
901 N. Glebe Road, Suite 900
Arlington, VA 22203
703-682-9320
Fax: 703-682-9321
Email: pjaicomo@ij.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Aronin**
Institute for Justice
901 N. Glebe Road, Suite 900
Arlington, VA 22203
703-682-9320
Fax: 703-682-9321
Email: waronin@ij.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna Bidwell**
Institute for Justice
901 N. Glebe Rd.
Suite 900
Arlington, VA 22203
7036829320
Fax: 7036829321
Email: abidwell@ij.org
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**City of Castle Hills, Texas**          represented by   **Lowell F. Denton**
Denton Navarro Rocha Bernal, & Zech, PC
2517 North Main Avenue
San Antonio, TX 78212
(210) 227-3243

Fax: 210/225-4481
Email: lfdenton@rampagelaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott M. Tschirhart**
Denton Navarro Rocha Bernal & Zech, P.C.
2500 W. William Cannon Drive, Suite 609
Austin, TX 78745
512-279-6431
Fax: 512-279-6438
Email: smtschirhart@rampagelaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Edward Trevino, II**                     represented by    **Lowell F. Denton**
*Mayor of Castle Hills, sued in his*                         (See above for address)
*individual capacity*                                        *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Scott M. Tschirhart**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**John Siemens**                           represented by    **Lowell F. Denton**
*Chief of the Castle Hills Police Department,*               (See above for address)
*sued in his individual capacity*                            *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Scott M. Tschirhart**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Alexander Wright**                       represented by    **Lowell F. Denton**
*sued in his individual capacity*                            (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Scott M. Tschirhart**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 09/29/2020 | 1 (p.6) | |

| | | |
|---|---|---|
| | | COMPLAINT *FOR RETROSPECTIVE RELIEF* ( Filing fee $ 400 receipt number 0542-14014883). No Summons requested at this time, filed by Sylvia Gonzalez. (Attachments: # 1 (p.6) Civil Cover Sheet, # 2 (p.72) Exhibit A, # 3 (p.73) Exhibit B, # 4 (p.74) Exhibit C, # 5 (p.75) Exhibit D)(Bidwell, Anna) (Entered: 09/29/2020) |
| 09/29/2020 | 2 (p.72) | REQUEST FOR ISSUANCE OF SUMMONS by Sylvia Gonzalez. (Bidwell, Anna) (Entered: 09/29/2020) |
| 09/29/2020 | 3 (p.73) | REQUEST FOR ISSUANCE OF SUMMONS by Sylvia Gonzalez. (Bidwell, Anna) (Entered: 09/29/2020) |
| 09/29/2020 | 4 (p.74) | REQUEST FOR ISSUANCE OF SUMMONS by Sylvia Gonzalez. (Bidwell, Anna) (Entered: 09/29/2020) |
| 09/29/2020 | 5 (p.75) | REQUEST FOR ISSUANCE OF SUMMONS by Sylvia Gonzalez. (Bidwell, Anna) (Entered: 09/29/2020) |
| 09/29/2020 | | Case assigned to Judge David A. Ezra. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (mgr) (Entered: 09/29/2020) |
| 09/29/2020 | | If ordered by the court, all referrals will be assigned to Magistrate Judge Chestney (mgr) (Entered: 09/29/2020) |
| 09/30/2020 | 6 (p.76) | MOTION to Appear Pro Hac Vice by Anna Bidwell ( Filing fee $ 100 receipt number 0542-14019224) by on behalf of Sylvia Gonzalez. (Attachments: # 1 (p.6) Attachment - List of Courts, # 2 (p.72) Proposed Order)(Bidwell, Anna) (Entered: 09/30/2020) |
| 09/30/2020 | 7 (p.81) | MOTION to Appear Pro Hac Vice by Anna Bidwell ( Filing fee $ 100 receipt number 0542-14019285) by on behalf of Sylvia Gonzalez. (Attachments: # 1 (p.6) Proposed Order)(Bidwell, Anna) (Entered: 09/30/2020) |
| 09/30/2020 | | Text Order GRANTING 6 (p.76) Motion to Appear Pro Hac Vice. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (lc) (Entered: 09/30/2020) |
| 09/30/2020 | | Text Order GRANTING 7 (p.81) Motion to Appear Pro Hac Vice. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (lc) (Entered: 09/30/2020) |
| 09/30/2020 | 8 (p.85) | Summons Issued as to City of Castle Hills, Texas, John Siemens, Edward Trevino, II, Alexander Wright. (mgr) (Entered: |

| | | |
|---|---|---|
| | | 09/30/2020) |
| 10/08/2020 | 9 (p.89) | SUMMONS Returned Executed by Sylvia Gonzalez. City of Castle Hills, Texas served on 10/1/2020, answer due 10/22/2020. (Bidwell, Anna) (Entered: 10/08/2020) |
| 10/08/2020 | 10 (p.90) | SUMMONS Returned Executed by Sylvia Gonzalez. John Siemens served on 10/1/2020, answer due 10/22/2020. (Bidwell, Anna) (Entered: 10/08/2020) |
| 10/08/2020 | 11 (p.91) | SUMMONS Returned Executed by Sylvia Gonzalez. Alexander Wright served on 10/5/2020, answer due 10/26/2020. (Bidwell, Anna) (Entered: 10/08/2020) |
| 10/08/2020 | 12 (p.92) | WAIVER OF SERVICE Returned Executed by Sylvia Gonzalez as to Edward Trevino, II. Waiver sent on 10/6/2020, answer due 12/7/2020. (Bidwell, Anna) (Entered: 10/08/2020) |
| 10/12/2020 | 13 (p.93) | Motion to Dismiss for Failure to State a Claim by City of Castle Hills, Texas, John Siemens, Edward Trevino, II, Alexander Wright. (Attachments: # 1 (p.6) Proposed Order Granting Defendants' Rule 12(b)(6) Motion to Dismiss)(Tschirhart, Scott) (Entered: 10/12/2020) |
| 10/13/2020 | 14 (p.122) | Order for Scheduling Recommendations/Proposed Scheduling Order. IT IS HEREBY ORDERED that the parties shall submit a proposed scheduling order to the Court within thirty (30) days from the date of this order., Notice of right to consent to disposition of a civil case by a U.S. Magistrate Judge.. Signed by Judge David A. Ezra. (mgr) (Entered: 10/13/2020) |
| 10/15/2020 | 15 (p.129) | Joint MOTION to Stay *Discovery Pending Ruling on Defendants' Motion to Dismiss* by City of Castle Hills, Texas, John Siemens, Edward Trevino, II, Alexander Wright. (Attachments: # 1 (p.6) Proposed Order)(Tschirhart, Scott) (Entered: 10/15/2020) |
| 10/16/2020 | 16 (p.134) | ORDER GRANTING 15 (p.129) Motion to Stay. IT ISHEREBY ORDERED that the parties shall submit a proposed scheduling order to the Court within thirty (30) days of the Courts ruling on Defendants pendingMotion to Dismiss (Dkt. # 13). Signed by Judge David A. Ezra. (mgr) (Entered: 10/16/2020) |
| 10/26/2020 | 17 (p.136) | Response in Opposition to Motion, filed by Sylvia Gonzalez, re 13 (p.93) Motion to Dismiss for Failure to State a Claim filed by Defendant Edward Trevino, II, Defendant John Siemens, Defendant Alexander Wright, Defendant City of Castle Hills, Texas (Bidwell, Anna) (Entered: 10/26/2020) |
| 10/28/2020 | 18 (p.159) | REPLY to Response to Motion, filed by City of Castle Hills, Texas, John Siemens, Edward Trevino, II, Alexander Wright, re 13 (p.93) Motion to Dismiss for Failure to State a Claim filed by Defendant Edward Trevino, II, Defendant John Siemens, Defendant Alexander Wright, Defendant City of Castle Hills, Texas (Tschirhart, Scott) (Entered: 10/28/2020) |
| 03/12/2021 | 19 (p.168) | |

| | | |
|---|---|---|
| | | ORDER DENYING 13 (p.93) Motion to Dismiss for Failure to State a Claim Signed by Judge David A. Ezra. (mgr) (Entered: 03/12/2021) |
| 03/15/2021 | 20 (p.202) | ORDER Lifting Stay --In light of the Courts ruling on Defendants motion to dismiss, the Court LIFTS the stay on discovery in this case.. Signed by Judge David A. Ezra. (mgr) (Entered: 03/15/2021) |
| 03/25/2021 | 21 (p.204) | *Defendants' Original* ANSWER to 1 (p.6) Complaint, by City of Castle Hills, Texas, John Siemens, Edward Trevino, II, Alexander Wright.(Tschirhart, Scott) (Entered: 03/25/2021) |
| 04/01/2021 | 22 (p.220) | Appeal of Order entered by District Judge 19 (p.168) by City of Castle Hills, Texas, John Siemens, Edward Trevino, II, Alexander Wright. ( Filing fee $ 505 receipt number 0542-14656271) (Tschirhart, Scott) (Entered: 04/01/2021) |
| 04/01/2021 | | NOTICE OF APPEAL following 22 (p.220) Notice of Appeal (E-Filed) by John Siemens, Edward Trevino, II, Alexander Wright. Per 5th Circuit rules, the appellant has 14 days, from the filing of the Notice of Appeal, to order the transcript. To order a transcript, the appellant should fill out a (Transcript Order) and follow the instructions set out on the form. This form is available in the Clerk's Office or by clicking the hyperlink above. (mgr) (Entered: 04/05/2021) |
| 04/06/2021 | 23 (p.223) | ORDER STAYING AND ADMINISTRATIVELY CLOSING THE CASE --In light of the notice of appeal, the Court ORDERS that this case be STAYED pending the Fifth Circuits decision on qualified immunity and DIRECTS the Clerks Office to ADMINISTRATIVELY CLOSE THIS CASE. IT IS FURTHER ORDERED that the parties shall submit a proposed scheduling order to the Court no later than thirty (30) days after the Court lifts the stay.. Signed by Judge David A. Ezra. (mgr) (Entered: 04/06/2021) |
| 04/13/2021 | 24 (p.225) | TRANSCRIPT REQUEST by City of Castle Hills, Texas, John Siemens, Edward Trevino, II, Alexander Wright. (Tschirhart, Scott) Modified TEXT on 4/14/2021 (dtg).***NO HEARINGS.*** (Entered: 04/13/2021) |

# TAB 2

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SYLVIA GONZALEZ, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.: 5:20-cv-01151-DAE |
| | § | |
| CITY OF CASTLE HILLS, TEXAS; | § | |
| EDWARD "JR" TREVINO, II, | § | |
| Mayor of Castle Hills, sued in his | § | |
| individual capacity; JOHN SIEMENS, | § | |
| Chief of the Castle Hills Police | § | |
| Department, sued in his individual | § | |
| capacity; and ALEXANDER WRIGHT, | § | |
| sued in his individual capacity, | § | |
|     Defendants. | § | |

---

## DEFENDANTS' NOTICE OF APPEAL

---

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Pursuant to Rule 3 of the Federal Rules of Appellate Procedure, Defendants Edward "Jr" Trevino, II, John Siemens, and Alexander Wright ("Defendants"), hereby give notice of their intent to appeal from the *Order Denying Motion to Dismiss* [Dkt. 19], signed by the Hon. David Alan Ezra, Senior United District Judge on March 12, 2021, in the United State District Court for the Western District of Texas, San Antonio Division. Defendants desire to appeal the portion of the *Order Denying Motion to Dismiss* denying Defendants' assertion of qualified immunity to the United States Court of Appeals for the Fifth Circuit.

The names of all parties to the Order appealed from and the names, addresses, telephone numbers and email addresses of their respective attorneys are as follows:

21-50276.220

**Defendants/Appellants**

City of Castle Hills, Texas;[1]
 Edward "Jr" Trevino, II, Mayor of Castle Hills, sued in his individual capacity;
John Siemens, (former) Chief of the Castle Hills Police Department, sued in his individual capacity; and
Alexander Wright, sued in his individual capacity.

**Attorneys for All Defendants/Appellants**

Scott M. Tschirhart
Lowell F. Denton
Denton Navarro Rocha Bernal & Zech, P.C.
2500 W. William Cannon Drive, Suite 609
Austin, Texas 78745
512/279-6431
512/279-6438 (Facsimile)
smtschirhart@rampagelaw.com
lfdenton@rampagelaw.com

**Plaintiff/Appellee**

Sylvia Gonzalez

**Attorneys for Plaintiff/Appellee**

Anya Bidwell
Patrick Jaicomo
Will Aronin
Institute for Justice
901 North Glebe Road, Suite 900
Arlington, VA 22203
703/682-9320
abidwell@ij.org
pjaicomo@ij.org
waronin@ij.org

SIGNED this 1st day of April 2021.

---

1 The City is not a party to this interlocutory appeal.

*Defs' Ntc of Appeal*                                                          2

Respectfully submitted,

Denton Navarro Rocha Bernal & Zech, P.C.
attorneys & counselors at law • rampagelaw.com

A Professional Corporation
2500 W. William Cannon Drive, Suite 609
Austin, Texas 78745
512/279-6431
512/279-6438 (Facsimile)
smtschirhart@rampagelaw.com
lfdenton@rampagelaw.com

By: _____

SCOTT M. TSCHIRHART
State Bar No. 24013655
LOWELL F. DENTON
State Bar No. 05764700

*Attorneys for All Defendants/Appellants*
*The City of Castle Hills, Texas; Edward*
*"JR" Trevino, II; John Siemens; and*
*Alexander Wright*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served in accordance with the Federal Rules of Civil Procedure on this 1st day of April 2021, to the following:

Anya Bidwell                                              **E-FILE NOTIFICATION**
Will Aronin
Patrick Jaicomo
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203

*Attorneys for Plaintiff/Appellee*
*Sylvia Gonzalez*

_____
SCOTT M. TSCHIRHART
LOWELL F. DENTON

*Defs' Ntc of Appeal*                                                                   3

# TAB 3

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SYLVIA GONZALEZ, | § | No. 5:20–CV–1151–DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CITY OF CASTLE HILLS, TEXAS; | § | |
| EDWARD TREVINO, II, Mayor of | § | |
| Castle Hills; JOHN SIEMENS, Chief of | § | |
| the Castle Hills Police Department; and | § | |
| ALEXANDER WRIGHT; | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER DENYING MOTION TO DISMISS</u>

Before the Court is Defendants' Motion to Dismiss Pursuant to Rule (12)(b)(6) that was filed on October 12, 2020. (Dkt. # 13.) Sylvia Gonzalez ("Plaintiff") filed a response on October 26, 2020. (Dkt. # 17.) Defendants then filed a reply on October 28, 2020. (Dkt. # 18.) Pursuant to Local Rule CV-7(h), the Court finds this matter suitable for disposition without a hearing. After careful consideration of the memoranda filed in support of and against the motion, the Court—for the reasons that follow—**DENIES** the motion.

1

## FACTUAL BACKGROUND

This case concerns the alleged retaliatory arrest of Sylvia Gonzalez, a former councilmember of the City of Castle Hills.  The City of Castle Hills ("City") is located in Bexar County, Texas and its governing body consists of a mayor and five aldermen, commonly referred to as councilmembers.  (Dkt. # 1.) The City has adopted the city-manager form of government and delegated extensive authority to its city manager.  (Id.)

On May 4, 2019, Plaintiff was elected as the first Hispanic councilwoman in Castle Hills history.  (Id.)  Ten days later, she was sworn in as a councilmember by Bexar County Sheriff Javier Salazar.  (Id.)  City Attorney Schnall was allegedly present at the ceremony and did not object to any part of the swearing-in.  (Id.)

Plaintiff organized a nonbinding citizens' petition advocating for the removal of city manager Ryan Rapelye.  (Dkt. # 17.)  According to Plaintiff, the petition had no legal force—it was designed to merely express citizens' discontent with Rapelye's performance.  (Dkt. # 1.)  The petition proposed that the city council replace Rapelye with Diane Pfeil, who previously served as city manager. (Id.)  On May 21, 2019, the day of Plaintiff's first council meeting, a resident submitted the petition to the city council.  (Id.)  The council argued over Rapelye's

2

21-50276.169

job performance for two days, and during the two-day meeting, Plaintiff sat next to Mayor Trevino.  (Id.)  Plaintiff claims that when the meeting ended, she stood up and walked away from her seat to speak with other councilmembers.  (Id.)  When she returned to gather her belongings, Mayor Trevino asked about the location of the petition.  (Id.)  Plaintiff allegedly found the petition in her binder and handed it to him.  (Id.)  Plaintiff argues that she did not intentionally place the petition in her binder and the petition never left the council table.  (Id.)

Plaintiff argues that in retaliation for the nonbinding petition and her criticism of certain city officials, Defendants planned a scheme to retaliate against her.  According to Plaintiff, Mayor Trevino tasked Police Chief Siemens with investigating and charging her for a criminal offense.  (Id.)  Siemens assigned a full-time police officer to investigate Plaintiff and her petition.  (Id.)  According to Plaintiff, when the officer did not find anything, Siemens then hired Special Detective Wright ("Wright").  (Id.)  Plaintiff states that Wright is not a police officer but is rather a full-time attorney in private practice with a police commission maintained by the City of Castle Hills.  (Id.)  After a month-long investigation, Wright brought one misdemeanor charge against Plaintiff for tampering with a government record for allegedly attempting to steal the petition.

(Dkt. # 1); see Tex. Penal Code § 37.10(a)(3), (c)(1).  Plaintiff contends that this charge "has never been brought against someone for even remotely similar conduct, and certainly not against someone for stealing their own petition."  (Dkt. # 17.)

Instead of issuing a summons for the nonviolent misdemeanor, Wright obtained a warrant to arrest the 72-year-old, which ensured that she would spend time in jail rather than remaining free and appearing before a judge.[1]  (Id.)  Defendants also bypassed the Bexar County District Attorney's Office, who upon later review, dismissed the charges.  (Id.)

According to Plaintiff, this was not the first time that Defendants had attempted to retaliate against her.  Plaintiff claims that on July 9, 2019, before her arrest, Defendants used a made-up technicality related to the manner in which she was sworn in to attempt to strip her of her council seat.  (Id.)  Plaintiff was sworn in by a sheriff, but Defendants alleged that because he was not "engaged in the performance of his duties," she was sworn in improperly.[2]  (Id.)  City Attorney

---

[1] When Plaintiff heard about the warrant, she turned herself in on July 18, 2019. (Dkt. # 1.)

[2] Plaintiff points out that this same technicality could have been used against Mayor Trevino, who was sworn in on the same day as Plaintiff.  (Dkt. # 17); see Tex. Gov't Code § 602.002(17).

4

Schnall told her that she could not be re-sworn in because more than 30 days had elapsed since Plaintiff's election.  (Dkt. # 1.)  For that reason, she would be replaced by Amy McLin, who Plaintiff beat in her election.  (Id.)

After the city attorney prevented the council from voting on Plaintiff's removal, Plaintiff filed suit and a judge issued a temporary restraining order on July 17, 2019 enjoining Defendants from moving forward with her removal.  (Id.) Having failed to remove Gonzalez, six Castle Hills residents—allegedly all closely allied with Mayor Trevino—filed a lawsuit in the name of the state of Texas to remove Gonzalez from office for incompetence and official misconduct.  (Id.) After the District Attorney moved to dismiss the action, the district court judge dismissed the case and denied the motion for a new trial.  (Dkt. # 1.)  The six residents appealed the ruling and as of the date that Plaintiff filed her complaint in this case, the appeal was still pending.  (Id.)  According to Plaintiff, her attorneys reached out to opposing counsel to release her from the lawsuit.  (Id.)  However, opposing counsel conditioned release on Plaintiff signing an affidavit stating that she would never run for city council again.  (Id.)

Plaintiff filed her complaint on September 29, 2020, bringing a § 1983 claim against Defendants Mayor Trevino, Police Chief Siemens, and Detective Wright (collectively, "Individual Defendants") for violating her First and Fourteenth Amendment rights.  (Id.)  She also brings a municipal liability claim

pursuant to § 1983 against Defendant City of Castle Hills for violating her First and Fourteenth Amendment rights.  (Id.); see Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  The matter before the Court is Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6).  (Dkt. # 13.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In analyzing whether to grant a 12(b)(6) motion, a court accepts as true "all well pleaded facts" and views those facts "in the light most favorable to the plaintiff."  United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (citation omitted).  A court need not "accept as true a legal conclusion couched as a factual allegation."  Iqbal, 556 U.S. at 678.

21-50276.173

## DISCUSSION

In their motion to dismiss, Defendants request that the Court take judicial notice of the warrant that was issued for Plaintiff's arrest. (See Dkt. # 13.) Because Plaintiff alleges that Defendants violated her constitutional rights by arresting her in retaliation for the nonbinding petition that she organized, the existence or nonexistence of probable cause is crucial when analyzing Plaintiff's claims. Federal Rule of Evidence 201 permits a district court to take judicial notice of a "fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A district court may take judicial notice of a fact at the motion to dismiss stage. Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc., 976 F.3d 585, 589 (5th Cir. 2020). In fact, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." Norris v. Hearst Trust, 500 F.3d 454, 461 n.9 (5th Cir. 2007). Because the warrant is a public record and bears the signature of the state court judge, the Court takes judicial notice of the warrant in considering the motion. See Dent v. Methodist Health Sys., No. 3:20-CV-00124-S, 2021 WL 75768, at *2 (N.D. Tex. Jan. 8, 2021) (taking judicial notice of a warrant attached to defendant's motion to dismiss plaintiff's § 1983 claim alleging false arrest).

7

Defendants raise several arguments in support of their motion to dismiss Plaintiff's claims. The Court will address their arguments in turn.

I. <u>Independent Intermediary Doctrine and Probable Cause</u>

Defendants maintain that Plaintiff's claims should be dismissed under the independent intermediary doctrine. (Dkt. # 13.) The warrant for Plaintiff's arrest was approved by a state court judge, who determined that there was probable cause for Plaintiff's arrest. (<u>Id.</u>) Because Plaintiff has not pled or proved the absence of probable cause, Defendants insist that Plaintiff's claims are barred. (<u>Id.</u>)

In response, Plaintiff argues that the independent intermediary doctrine does not apply because she did not bring her claims under the Fourth Amendment. (Dkt. # 17.) With respect to her municipal liability claim, she also contends that under <u>Lozman v. City of Riviera Beach</u>, 138 S. Ct. 1945 (2018), <u>Monell</u> liability can exist when its leadership punishes an individual in retaliation for her speech, even if the city can find probable cause for an infraction. (Dkt. # 17.) With respect to her claim against the Individual Defendants, Plaintiff argues that <u>Nieves v. Bartlett</u>, 139 S. Ct. 1715 (2019) does not apply. (<u>Id.</u>) Instead, she contends that she only needs to meet the standard announced in <u>Mt. Healthy City School District Board of Education v. Doyle</u>, 429 U.S. 274 (1977), and she has

8

done so here.  (Id.)  In their reply, Defendants maintain that the independent

intermediary doctrine applies in First Amendment cases.  (Dkt. # 18.)  They also

contend that neither Lozman nor Mount Healthy supports Plaintiff's arguments.

(Id.)

"It is well settled that if facts supporting an arrest are placed before an

independent intermediary such as a magistrate or grand jury, the intermediary's

decision breaks the chain of causation for false arrest, insulating the initiating

party."  Deville v. Marcantel, 567 F.3d 156, 170 (5th Cir. 2009) (quoting Taylor v.

Gregg, 36 F.3d 453, 456 (5th Cir. 1994)). "[T]he initiating party may be liable for

false arrest if the plaintiff shows that 'the deliberations of that intermediary were in

some way tainted by the actions of the defendant.'" Id. (quoting Hand v. Gary,

838 F.2d 1420, 1428 (5th Cir. 1988)). But, "because the intermediary's

deliberations protect even officers with malicious intent," a plaintiff must show

that the official's malicious motive led the official to withhold relevant information

or otherwise misdirect the independent intermediary by omission or commission.

Buehler v. City of Austin/Austin Police Dep't., 824 F.3d 548, 555 (5th Cir. 2016);

Buehler v. Dear, No. 1:17-CV-724-DAE, 2020 WL 5793008, at *6 (W.D. Tex.

Mar. 27, 2020).

Although Defendants have correctly pointed out that the Fifth Circuit has held that the independent intermediary doctrine applies in First Amendment cases,[3] those cases predate two leading Supreme Court cases, Lozman and Nieves, which are particularly instructive here because they both concern when plaintiffs must make a no-probable-cause showing in support of a First Amendment retaliatory arrest claim. The Court will first consider Plaintiff's municipal liability claim before addressing her claim against the Individual Defendants.

A.    Municipal liability claim

The U.S. Supreme Court has held that the existence of probable cause does not bar all First Amendment retaliatory arrest claims brought against a municipality. In Lozman, the plaintiff frequently criticized a municipal development project and opposed what he perceived as improper conduct by various city officials. 138 S. Ct. at 1950. The plaintiff, Lozman, participated in the public-comment session of the city council meetings more than 200 times and he filed a lawsuit alleging that the city council violated Florida's open-meetings

---

[3] See Curtis v. Sowell, 761 F. App'x 302, 205 (5th Cir. 2019) (holding that the district court did not err in dismissing the plaintiff's First Amendment claim because "probable cause was independently established by [a] grand jury"); Buehler v. City of Austin/Austin Police Dep't, 824 F.3d 548, 554 (5th Cir. 2016); Russell v. Altom, 546 F. App'x 432, 436–37 (5th Cir. 2013). Although Curtis does not predate Lozman, the Fifth Circuit noted in a footnote that Lozman did not apply because the plaintiff did not allege that the defendant prosecuted him as part of an "official retaliatory policy" to silence him. Curtis, 761 F. App'x at 305 n.1.

laws.  Id.  At one council meeting, he stood at the podium and began speaking

about arrests of former officials.  Id.  One councilmember told him to stop talking,

and a police officer approached Lozman and asked him to leave the podium.  Id.

When he refused, Lozman was arrested and charged with disorderly conduct and

resisting arrest without violence.  Id. at 1949–50.  The State's attorney later

determined that there was probable cause to arrest Lozman for the offenses but

decided to dismiss the charges.  Id. at 1950.  Lozman filed a lawsuit against the

City for its alleged retaliatory actions, and after a 19-day trial, the jury returned a

verdict for the City on all claims.  Id.  When the case reached the U.S. Supreme

Court, the plaintiff challenged only the City's alleged retaliatory arrest.  Id.

      The Supreme Court held that the existence of probable cause does not

bar all First Amendment retaliatory arrest claims brought against a municipality.

Id. at 1955.  The fact that the plaintiff had to prove the existence and enforcement

of an official policy motivated by retaliation separated his claim from the typical

retaliatory arrest claim.  Id. at 1954.  The Court explained,

> An official retaliatory policy is a particularly troubling and
> potent form of retaliation, for a policy can be long term and
> pervasive, unlike an ad hoc, on-the-spot decision by an
> individual officer.  An official policy also can be difficult to
> dislodge.  A citizen who suffers retaliation by an individual
> officer can seek to have the officer disciplined or removed from
> service, but there may be little practical recourse when the
> government itself orchestrates the retaliation.

11

Id.  Further, the causation problem in retaliatory arrest cases "is not of the same

difficulty where, as is alleged here, the official policy is retaliation for prior,

protected speech bearing little relation to the criminal offense for which the arrest

is made."  Id.  Finally, the Supreme Court noted that the "right to petition '[i]s one

of the most precious of the liberties safeguarded by the Bill of Rights.'"  Id.

(quoting BE & K. Constr. Co. v. NLRB, 536 U.S. 516, 524 (2002)).  Because

Lozman alleged that the City deprived him of the right to petition by retaliating

against him for his lawsuit and criticisms of public officials, Lozman's speech was

"high in the hierarchy of First Amendment values."  Id.

      The Court finds that Lozman controls here.  First, Plaintiff alleges the

existence of a retaliatory policy,[4] just as the plaintiff alleged in Lozman.  (See Dkt.

# 1.)  Second, like Lozman, this is not an ordinary retaliatory arrest claim—here,

Plaintiff alleges that Defendants tried many times to strip her of her council seat.

(See id.)  For example, according to Plaintiff, Defendants attempted to strip her of

her council seat pursuant to a swearing-in technicality, a lawsuit brought by

residents who are allegedly closely allied with Defendants, and an arrest.  (See id.)

---

[4] For example, Plaintiff alleges "Castle Hills adopted and enforced an official
policy or custom to retaliate against Sylvia for her First Amendment activities,
namely the expression of her political thought through a nonbinding citizens'
petition urging the firing of city manager Rapelye."  (Dkt. # 1.)  Plaintiff further
alleges "[t]his scheme was a part of an official policy or custom that was
deliberate, long-term, and pervasive, unlike on-the-spot decisions to arrest,
sometimes made by individual officers in split-second situations."  (Id.)

21-50276.179

And even then, the nonviolent misdemeanor offense was brought because she allegedly stole her *own* petition.  (See id.)  Thus, the connection between the alleged animus and injury will not be "weakened . . . by [an official's] legitimate consideration of speech."  Lozman, 138 S. Ct. at 1954 (quoting Reichle v. Howards, 566 U.S. 658, 668 (2012)).  Finally, because the "right to petition [i]s one of the most precious of the liberties safeguarded by the Bill of Rights," Plaintiff's speech is "high in the hierarchy of First Amendment values."  Id.  "For these reasons, [Gonzalez] need not prove the absence of probable cause to maintain a claim of retaliatory arrest against the City."[5]  Id. at 1955.

The Court recognizes that Lozman involved an atypical retaliatory arrest claim.  Id. at 1954 (characterizing claims such as the one in Lozman as a "unique class of retaliatory arrest claims" and stating that "Lozman's claim is far afield from the typical retaliatory arrest claim").  The Supreme Court stated that "[o]n facts like these, Mt. Healthy provides the correct standard for assessing a retaliatory arrest claim" and "[t]he Court need not, and does not, address the elements required to prove a retaliatory arrest claim in other contexts."  Id. at 1955.  However, as the Court discusses above, Lozman and this case share many crucial

---

[5] Although the Supreme Court noted that cases like Lozman "will require objective evidence of a policy motivated by retaliation to survive summary judgment," this is a motion to dismiss and Plaintiff has satisfied her pleading requirements under Rule 8.  Lozman v. City of Riviera Beach, 138 S. Ct. 1945, 1954 (2018).

facts. Further, Defendants, who did not even cite <u>Lozman</u> in their motion to dismiss, have failed to distinguish <u>Lozman</u> from this case. First, in their reply, Defendants assert that <u>Lozman</u> is different because it was not decided at the pleading stage—it was an appeal from an adverse jury verdict after a 19-day trial. (<u>See</u> Dkt. # 18.) However, Defendants do not explain why or how these distinct stages of litigation necessarily require a different outcome. At this stage of the litigation, Plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. Second, Defendants state that Lozman's claim was "far afield from the typical retaliatory arrest claim." (Dkt. # 18.) However, as described above, the characteristics of <u>Lozman</u> that distinguish that case from typical retaliatory arrest cases are present in this case as well. Third, Defendants state that Lozman's arrest was only part of the City's retaliatory conduct. (<u>Id.</u>) But, as described above, Plaintiff alleges that other retaliatory actions were taken in this case too. The Court discussed above why causation is not weakened in this case by not requiring Plaintiff to prove the absence of probable cause. Therefore, the Court will not dismiss Plaintiff's claims against the City merely because probable cause may have existed for the misdemeanor offense.

B.  Claim Against Individual Defendants

Nieves involved a retaliatory arrest claim against two police officers. 139 S. Ct. at 1724, 1726. The plaintiff, Bartlett, was arrested at a winter sports festival in a remote part of Alaska. Id. at 1720. While a law enforcement officer was speaking with a group of attendees, Bartlett shouted at them to stop talking to the police. Id. When the officer approached him, Bartlett yelled at the officer to leave. Id. Bartlett then confronted another law enforcement officer who was questioning a minor. Id. He stepped towards the officer in an allegedly combative manner, who pushed him back. Id. Bartlett was arrested for disorderly conduct and resisting arrest. Id. at 1721. He brought a § 1983 claim against the officers, alleging that they violated his First Amendment rights by arresting him in retaliation for his speech (i.e., his initial refusal to speak with the first officer and his intervention in the second officer's discussion with the minor). Id.

The U.S. Supreme Court held that in most retaliatory arrest cases, the plaintiff must plead and prove the absence of probable cause for the arrest.[6] Id. at 1724, 1726. In reaching this decision, the Court explained the complex causal inquiry in these cases, particularly given that "[o]fficers frequently make 'split-

---

[6] The Court noted that Lozman did not apply here because that case "involved unusual circumstances in which the plaintiff was arrested pursuant to an alleged 'official municipal policy' of retaliation." Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019).

15

second judgments' when deciding whether to arrest, and the content and manner of a suspect's speech may convey vital information—for example, if he is 'ready to cooperate' or rather 'present[s] a continuing threat.'" Id. at 1724 (quoting Lozman, 138 S. Ct. at 1953).

However, the Supreme Court also carved out an exception to this general rule.[7]  The Court stated that "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."[8]  Id. at 1727.  The Court reasoned that such a showing

---

[7] This is not to be confused with Plaintiff's characterization of Nieves as an exception to Mt. Healthy.  (Dkt. # 17.)  The Supreme Court states in Nieves that the Mt. Healthy test applies only if the plaintiff establishes the absence of probable cause.  Nieves, 139 S. Ct. at 1725; see DeMartini v. Town of Gulf Stream, 942 F.3d 1277, 1296 (11th Cir. 2019).  Absent such a showing, the retaliatory arrest claim fails unless it falls within the Nieves exception.  139 S. Ct. at 1725, 1727.  In Plaintiff's response to Defendants' motion to dismiss, she does not argue that there was no probable cause for her arrest.  Thus, in deciding Defendants' motion to dismiss, the Court will evaluate Plaintiff's claim under Nieves rather than Mt. Healthy.

[8] The Supreme Court provided the following example of a case that would fall under the exception:
> [A]t many intersections, jaywalking is endemic but rarely results in arrest.  If an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest.

Nieves, 139 S. Ct. at 1727.

21-50276.183

addresses the causal concern by helping to establish that "non-retaliatory grounds [we]re in fact insufficient to provoke the adverse consequences." Id. (quoting Hartman v. Moore, 547 U.S. 250, 256 (2006)). Because this inquiry is objective, it avoids the problems that would be created by reviewing the officers' subjective intent. Id. Further, "[a]fter making the required showing, the plaintiff's claim may proceed in the same manner as claims where the plaintiff has met the threshold showing of the absence of probable cause." Id.

The Court finds that the Nieves exception applies in this case and Plaintiff need not plead or prove the absence of probable cause. Plaintiff alleges that the misdemeanor offense for which she was charged has "never been used in Bexar County to criminally charge someone for trying to steal a nonbinding or expressive document." (See Dkt. # 1.) In support of her argument, Plaintiff states that misdemeanor and felony data from Bexar County over the past decade shows that of "215 grand jury felony indictments obtained under the tampering statute at issue in this case, not one had an allegation even closely resembling the one mounted against Sylvia." (Id.) According to Plaintiff, most of the indictments involved accusations of either "using or making fake government identification documents: altered driver's licenses, another person's ID, temporary identification cards, public safety permits, green cards, or social security numbers" and some indictments involved misuse of financial information. (Id.) The "outlier"

17

indictments allegedly involve "hiding evidence of murder, cheating on a government-issued exam, and using a fake certificate of title, among others." (Id.) In the misdemeanor cases, Plaintiff claims that the alleged tampering typically involved the use of fake social security numbers, driver's licenses, and green cards. (Id.) Plaintiff further argues that according to the data, people accused of such nonviolent offenses typically do not go to jail. (Id.) At the motion to dismiss stage, the Court accepts as true Plaintiff's well pleaded facts and views those facts "in the light most favorable to the plaintiff." Kellogg Brown, 727 F.3d at 346. Because Plaintiff alleges the existence of objective evidence that she was arrested when "otherwise similarly situated individuals not engaged in the same sort of protected speech had not been," the Court will not dismiss Plaintiff's § 1983 claim against the Individual Defendants for failing to plead and prove the absence of probable cause. Nieves, 139 S. Ct. at 1727.

## II. Qualified Immunity

The parties seem to disagree on Plaintiff's burden to defeat the qualified immunity defense on a motion to dismiss. Defendants contend that once a qualified immunity defense is raised, the Fifth Circuit requires a plaintiff to meet a heightened pleading standard "to show with factual detail and particularity why the

defendant official cannot maintain the qualified immunity defense." (Dkt. # 13)
(citing Elliot v. Perez, 751 F.2d 1472, 1473 (5th Cir. 1985), Schultea v. Wood,
47 F.3d 1427, 1429–34 (5th Cir. 1995), and Morgan v. Hubert, 335 F. App'x 466,
472–73 (5th Cir. 2009)).

In response, Plaintiff maintains that the district court must merely
determine whether the plaintiff has "file[d] a short and plain statement [in] his
complaint, a statement that rests on more than conclusions alone." Anderson v.
Valdez, 845 F.3d 580, 589–90 (5th Cir. 2016) (quoting Schultea, 47 F.3d at 1433);
(Dkt. # 17.) In other words, "a plaintiff must plead qualified-immunity facts with
the minimal specificity that would satisfy Twombly and Iqbal." (Dkt. # 17)
(quoting Arnold v. Williams, 976 F.3d 535, 540 (5th Cir. 2020)).

In the Fifth Circuit,

> [s]ection 1983 claims implicating qualified immunity are subject
> to the same Rule 8 pleading standard set forth in Twombly and
> Iqbal as all other claims; an assertion of qualified immunity in a
> defendant's answer or motion to dismiss does not subject the
> complaint to a heightened pleadings standard.

Arnold v. Williams, 979 F.3d 262, 267 (5th Cir. 2020). Defendants' reliance on
Schultea is mistaken. Schultea states that "[w]hen a public official pleads the
affirmative defense of qualified immunity in his answer, the district court may, on
the official's motion or on its own, require the plaintiff to reply to that defense in

detail." 47 F.3d at 1433.  However, the Court did not do so in this case and

Plaintiff is not required "to anticipate a defendant's qualified immunity defense by

providing greater specificity in their initial complaint."  <u>DeGroff v. Bost</u>,

No. 6:20-CV-00067-ADA-JCM, 2020 WL 6528078, at *4 (W.D. Tex. Nov. 5,

2020) (citing <u>Crawford-El v. Britton</u>, 523 U.S. 574, 595 (1998)).  In the context of

a Rule 12(b)(6) motion to dismiss, the Court must determine whether "the

plaintiff's pleadings assert facts which, if true, would overcome the defense of

qualified immunity."  <u>Backe v. LeBlanc</u>, 691 F.3d 645, 648 (5th Cir. 2012)

(quoting <u>Wicks v. Miss. State Emp. Servs.</u>, 41 F.3d 991, 994–95 (5th Cir. 1995));

<u>see</u> <u>Saenz v. G4S Secure Solutions (USA), Inc.</u>, 224 F. Supp. 3d 477, 481 (W.D.

Tex. 2016); <u>Rojero v. El Paso County</u>, 226 F. Supp. 3d 768, 776–77 (W.D. Tex.

2016).  Thus, the Court agrees with Plaintiff concerning her burden of overcoming

the qualified immunity defense at the motion to dismiss stage.

   "[A] plaintiff seeking to overcome qualified immunity must plead

specific facts that both allow the court to draw the reasonable inference that the

defendant is liable for the harm he has alleged and that defeat a qualified immunity

defense with equal specificity."  <u>Backe</u>, 691 F.3d at 648.  Once the district court

finds that the plaintiff has so pled, if the court remains "unable to rule on the

immunity defense without further clarification of the facts," it may issue a

discovery order "narrowly tailored to uncover only those facts needed to rule on the immunity claim." Id. (quoting Lion Boulos v. Wilson, 834 F.2d 504, 507–08 (5th Cir. 1987)).

Qualified immunity shields government officials from liability when performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Kinney v. Weaver, 367 F.3d 337, 349 (5th Cir. 2004). Courts evaluate qualified immunity defenses in two steps. First, a court must determine whether the "facts alleged show the officer's conduct violated a constitutional right." Brown v. Miller, 519 F.3d 231, 236 (5th Cir. 2008) (quoting Scott v. Harris, 550 U.S. 372, 377 (2007)). Second, if the court finds a violation, it must determine whether "the right was clearly established . . . in light of the specific context of the case." Id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). To be "clearly established" for purposes of qualified immunity, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (quoting Atteberry v. Nocona Gen. Hosp., 430 F.3d 245, 256 (5th Cir. 2005)). There need not be "commanding precedent" that holds that the "very action in question" is unlawful; the unlawfulness need only be "readily apparent from relevant precedent in sufficiently similar situations." Id. at 237 (quoting Atteberry, 430 F.3d at 257).

The right allegedly violated must be established not as a broad general proposition, but in a "particularized" sense "so that the 'contours' of the right are clear to a reasonable official."  Reichle v. Howards, 566 U.S. 658, 665 (2012).  "Here, the right in question is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause."  Id.  "[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech.  Hartman v. Moore, 547 U.S. 250, 256 (2006).  If an official takes actions against someone based on the forbidden motive and "non-retaliatory grounds are in fact insufficient to provoke the adverse consequences," the injured person may seek relief by bringing a First Amendment claim.  Id.; see Nieves, 139 S. Ct. at 1722.  To prevail on this claim, "a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'"  Nieves, 139 S. Ct. at 1722 (quoting Hartman, 547 U.S. at 259).  The motive must be a "but-for" cause of the injury, such that the adverse action would not have been taken absent the retaliatory motive.  Id.  As described above, the plaintiff typically must plead and prove the absence of probable cause for the arrest unless "a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."  Id. at 1727.

The Court finds that, viewing the facts in the light most favorable to Plaintiff, the Individual Defendants violated Plaintiff's constitutional rights. Plaintiff alleges that she was arrested because she organized a nonbinding citizens' petition, not because she attempted to steal her own petition.  (Dkt. # 1.)  She claims that the Individual Defendants acted with a retaliatory motive by alleging that they took several actions to attempt to take away her council seat.  (Id.)  She further alleges that "[t]he retaliatory arrest manufactured by the City and the Individual Defendants directly and proximately caused severe harms" including harm to Plaintiff's reputation, future opportunities, finances, faith in the criminal justice system, and physical health.  (Id.)  These allegations support the existence of a retaliatory motive and causation.  As described above, even if there were probable cause to arrest Plaintiff for the misdemeanor, the exception in Nieves applies here because she has pled the existence of objective evidence that she was arrested when "otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."  139 S. Ct. at 1727.  Therefore, Plaintiff has alleged the existence of a constitutional violation.

To show that a right was "clearly established," a plaintiff must identify either "controlling authority" or a "consensus of cases of persuasive authority" sufficient to clearly signal to a reasonable official that certain conduct falls short of the constitutional norm.  Wilson v. Layne, 526 U.S. 603, 617 (1999).  The Court

finds that when Plaintiff was arrested, this right was clearly established. Before
Nieves, the U.S. Supreme Court held that the First Amendment right to be free
from a retaliatory arrest that is supported by probable cause was not clearly
established. See Reichle, 566 U.S. at 664–65 ("This Court has never recognized a
First Amendment right to be free from a retaliatory arrest that is supported by
probable cause . . . [the arresting officers] are thus not entitled to qualified
immunity."); Lozman, 138 S. Ct. at 1954 ("[W]hether in a retaliatory arrest case [a
suit should be barred] where probable cause exists . . . must await a different
case."). Other courts have found that this was not a clearly established right before
Nieves. See Lund v. City of Rockford, 956 F.3d 938, 948–49 (7th Cir. 2020)
(holding that the officers were entitled to qualified immunity because the incident
occurred before Nieves was decided); Phillips v. Blair, 786 F. App'x 519, 529 (6th
Cir. 2019) (holding that there was no First Amendment right to be free from a
retaliatory arrest otherwise supported by probable cause that was clearly
established in 2014); Turner v. Williams, No. 3:19-CV-641-J-32PDB, 2020 WL
1904016, at *9 (M.D. Fla. Apr. 17, 2020) ("[I]t was not clearly established until
Nieves, that an officer could be liable for an alleged retaliatory arrest" even where
probable cause is present); Woolum v. City of Dallas, No. 3:18-cv-2453-B-BN,
2020 WL 687614, at *11 (N.D. Tex. Jan. 22, 2020) (holding that Nieves did not

make the right clearly established in the case because the alleged retaliatory arrest

occurred in 2017)[9]; Cano v. Vickery, Civ. A. No. H-16-392, 2018 WL 4567169, at

*6 (S.D. Tex. Sept. 24, 2018) (holding that qualified immunity did not apply

before Nieves). The Supreme Court has stated that "in [some] instances a general

constitutional rule already identified in the decisional law may apply with obvious

clarity to the specific conduct in question, even though 'the very action in question

has [not] previously been held unlawful.'" United States v. Lanier, 520 U.S. 259,

271 (1997) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

     Nieves was decided on May 28, 2019. The warrant for Plaintiff's arrest

was issued on July 17, 2019 and Plaintiff turned herself in on July 18, 2019. (See

Dkts. ## 1, 13.) Because Nieves was decided two months before the alleged

retaliatory arrest, the Court finds that the right was clearly established. See Turner

v. Lieutenant Driver, 848 F.3d 678, 685 (5th Cir. 2017) ("The right must be clearly

established 'at the time of the challenged conduct.'"). Plaintiff further alleges that

"[e]very reasonable government official would have had a fair warning that

[retaliating against individuals in violation of the First Amendment] and

---

[9] The district court judge for this case adopted the recommendation of the magistrate judge in Woolum v. City of Dallas, No. 3:18-CV-2453-B-BN, 2020 WL 636903, at *1 (N.D. Tex. Feb. 11, 2020).

participating in a scheme to do so is unconstitutional." (Dkt. # 1.) The Court finds that Defendants have not shown that they are entitled to qualified immunity and thus the Court will not dismiss Plaintiff's claims against the Individual Defendants.

## III. Municipal liability

Defendants argue that Plaintiff fails to properly allege its municipal liability claim. (Dkt. # 13.) According to Defendants, Plaintiff failed to allege facts supporting "single incident" liability or that Mayor Trevino, Police Chief Siemens, or Special Detective Wright are final policymakers. (Id.) Defendants further maintain that Plaintiff did not allege the existence of a written policy or custom, or that any policy or custom caused the alleged constitutional violation. (Id.) Finally, Defendants insist that Plaintiff has not alleged the existence of a pattern of similar incidents that can be used to show deliberate indifference. (Id.)

In response, Plaintiff states that she has adequately pled that her arrest was "a constitutional violation whose moving force [was] that policy (or custom)" by stating "had Castle Hills lacked animus toward Sylvia's speech, it would have never devised, adopted or implemented its policy of retaliation." (Dkt. # 17 (citing Dkt. # 1.)) Plaintiff maintains that Defendants' causation argument is foreclosed by Lozman and urges the Court to find that she has adequately pled that the Individual Defendants were policymakers and participated in the retaliatory policy. (Id.)

Municipal liability under § 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001).

### A. <u>Policymaker</u>

To impose municipal liability, there must be an official policymaker "with actual or constructive knowledge of the constitutional violation" that acted on behalf of the municipality. <u>Zarnow v. City of Wichita Falls</u>, 614 F.3d 161, 167 (5th Cir. 2010). "The policymaker must have final policymaking authority." <u>Rivera v. Hous. Indep. Sch. Dist.</u>, 349 F.3d 244, 247 (5th Cir. 2003). Whether a specific official has final policymaking authority is a question of state law. <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 737 (1989). In the Fifth Circuit, "the specific identity of the policymaker is a legal question that need not be pled; the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." <u>Groden v. City of Dallas</u>, 826 F.3d 280, 284 (5th Cir. 2016).

Plaintiff has provided two pages of allegations in support of her claim that City Manager Rapelye, City Attorney Schnall, councilmember McCormick, and the Individual Defendants in this case are policymakers with policymaking authority. (<u>See</u> Dkt. # 1.) For example, Plaintiff alleges that "[a]s mayor—

27

president of the city council—defendant Trevino is a municipal policymaker, and

his decisions and actions described in this complaint represent official Castle Hills

Policy."  (Id.)  With respect to Police Chief Siemens, Plaintiff states that "[a]s

police chief—executive head of the police department—defendant Siemens is a

municipal policymaker, and his decisions and actions described in this complaint

represent official Castle Hills policy."  (Id.)  With respect to Wright, Plaintiff states

that

> [a]s special detective—charged directly by defendant Siemens
> and defendant Trevino with assigning [a] criminal charge to
> Sylvia—defendant Wright's decisions and actions described in
> this complaint represent official Castle Hills policy.
> Alternatively, as policymakers supervising and directing
> defendant Wright, defendant Siemens, defendant Trevino, city
> manager Rapelye, and councilmember McCormick ratified
> defendant Wright's actions as municipal policy.

(Dkt. # 1.)

Upon analyzing the Code of Ordinances for the City of Castle Hills, it

appears that none of Plaintiff's suggested policymakers have "final policymaking

authority."  Given that Plaintiff challenges the alleged retaliatory arrest, the Court

will first determine whether Police Chief Siemens has policymaking authority

given that in Castle Hills, he "is the executive head of the police department."

Code of Ordinances, City of Castle Hills, Texas § 24-21.  Although the code states

that the duties of the police chief are "to supervise, regulate, and manage the

department and have control of all its activities," the code also states that the police

chief "is directly responsible to the city manager for the proper and efficient operation of the department."  Id.  Thus, because he directly reports to the city manager, Police Chief Siemens does not have final policymaking authority here.

City manager Rapelye also does not have final policymaking authority. In the City of Castle Hills, the city manager is appointed by the city council and serves as "the administrative head of the municipal government under the direction and supervision of the council."  Id. § 2-134.  Again, given that the city manager is merely the administrative head "under the direction and supervision of" the council, City Manager Rapelye also does not have final policymaking authority.[10]

Mayor Trevino also does not have policymaking authority.  Although the mayor serves as the president of the city council and presides at the meetings, he does not have a vote at the meetings unless the city council is divided.  Id. § 2-108.  Practically speaking, it appears that this should not happen often given that *five* alderman serve on the city council.  See id. § 2-23.

---

[10] Where local law does not delegate authority from the council to the city manager, the city manager does not have final policymaking authority here.  The Fifth Circuit has held that Texas "state law alone does not give to city managers 'the responsibility for making law or setting policy in any given area of a local government's business.'"  Bolton v. City of Dallas, 541 F.3d 545, 550 (5th Cir. 2008); see Tex. Local Gov't Code Ann. § 25.029.  "State law instead reserves that role for the 'governing body.'"  Bolton, 541 F.3d at 550.

"A city's governing body may delegate policymaking authority

(1) by express statement or formal action or (2) 'it may, by its conduct or practice,

encourage or acknowledge the agent in a policymaking role.'" Zarnow, 614 F.3d

at 167 (quoting Bennett v. City of Slidell, 728 F.2d 762, 769 (5th Cir. 1984)).  The

Court finds that the city council has the final policymaking authority in this case,

and to the Court's knowledge, there has been no delegation of this authority.

Further, while the council is comprised of the mayor and five aldermen, it cannot

be said that an individual member of the council has final policymaking authority

when it has been vested in the entire council.  However, the fact that individual

council members were aware of the incidents described in this lawsuit leads the

Court to conclude that is premature to determine that the council did not have

"actual or constructive knowledge of the constitutional violation" while acting on

behalf of the municipality.  Id.

   Even though Plaintiff failed to specifically identify the city council as a

policymaker in the complaint, this is not a proper basis for dismissal.  "[T]he

complaint need only allege facts that show an official policy, promulgated or

ratified by the policymaker, under which the municipality is said to be liable."

Groden, 826 F.3d at 284.  The Court will thus need to determine whether the city

council promulgated or ratified the custom or policy alleged by Plaintiff.

B.   <u>Custom or Policy</u>

A plaintiff may establish the existence of an official policy by showing "(1) a formally adopted municipal policy; (2) an informal custom or practice; (3) a custom or policy of inadequate training, supervision, discipline, screening, or hiring; or (4) a single act by an official with final policymaking authority." <u>Snow v. City of El Paso</u>, 501 F. Supp. 2d 826, 831 (W.D. Tex. 2006); <u>see</u> <u>Monell</u>, 436 U.S. at 694 (establishing that § 1983 municipal liability claims may be based on an officially adopted and promulgated policy); <u>Johnson v. Moore, III</u>, 958 F.2d 92, 94 (5th Cir. 1992) (explaining that municipal liability may be based on "persistent and widespread practice" of which actual or constructive knowledge is attributable to the policymaking authority); <u>City of Canton v. Harris</u>, 489 U.S. 378, 385–88 (1989) (explaining that § 1983 municipal liability claims may be based on inadequacy of training where the failure to train amounts to deliberate indifference to the rights of persons); <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480–81 (1986) (explaining that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances").

Plaintiff cannot establish "single incident" liability because she has not alleged that the retaliatory arrest was orchestrated by the city council, the final policymaker.  However, the Court finds that Plaintiff has met her burden of

pleading the existence of "a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984). Showing a pattern of conduct is necessary "only where the municipal actors are *not* policymakers." Zarnow, 614 F.3d at 169. Plaintiff asserts that "Castle Hills has a history of cracking down on disfavored speech" and has "retaliate[ed] against city residents who voice criticism of the City or its officials or who petition the City for redress of grievances." (Dkt. # 1.) Plaintiff provides two examples. According to Plaintiff, in 2017 or 2018, a local resident was threatened by "the former police chief, the former mayor, and the former city manager" at his home after he organized a petition to advocate for the closing of an impound lot in his neighborhood. (Id.) Plaintiff also claims that in 2018, the former mayor threatened another city resident with an easement violation after the resident put up opposition campaign signs on private front yards with owner permission. (Id.) Defendants take issue with these examples because they did not lead to false arrests, but the Court finds that because they concern citizens' First

Amendment rights, these incidents are sufficient to show a "persistent, widespread practice" at the pleading stage.[11] Thus, Plaintiff has met her burden of pleading the existence of a policy or custom at the motion to dismiss stage.

## C. "Moving Force"

Plaintiff has also adequately pled a violation of constitutional rights whose "moving force" is the policy or custom. For purposes of a Rule 12(b)(6) motion, when it comes to alleging causation or "moving force," it is enough that the plaintiff pleads that the policy was the reason for the arrest. See Groden, 826 F.3d at 286–87. Plaintiff has alleged that the "actions undertaken or ratified by the City constitute the moving force behind the retaliatory arrest aimed at Sylvia's exercise of her First Amendment rights, which caused harm to Sylvia, including, but not limited to damage to her reputation, her health, her financial circumstances, and other adverse effects." (Dkt. # 1.) She further alleges that "[h]ad it not been for the retaliatory animus, the City would have never caused, permitted, or approved Sylvia's arrest for championing a nonbinding citizens' petition that did nothing other than express public discontent with the city government." (Id.) Further, Defendants' argument that Plaintiff cannot plead causation because there

---

[11] This does not mean that Plaintiff will ultimately prevail on this issue—the Court finds merely that Plaintiff has met her burden at the pleading stage.

was probable cause for the arrest is foreclosed by <u>Lozman</u>, as described above.

Because Plaintiff has adequately pled all of the requirements for her <u>Monell</u> claim,

the Court denies Defendants' motion to dismiss Plaintiff's municipal liability

claim.

<u>CONCLUSION</u>

For the reasons stated above, Defendants' Motion to Dismiss Pursuant

to Rule 12(b)(6) (Dkt. # 13) is **DENIED**.

**IT IS SO ORDERED**.

**DATE:** San Antonio, Texas, March 12, 2021.

_____

David Alan Ezra
Senior United States District Judge

Respectfully submitted,

**DENTON NAVARRO ROCHA BERNAL**
  **& ZECH, P.C.**
2500 W. William Cannon Drive, Suite 609
Austin, Texas 78745
512/279-6431
512/279-6438 (Facsimile)
smtschirhart@rampagelaw.com
lfdenton@rampagelaw.com


By:    s/ *Scott Michael Tschirhart*
        SCOTT M. TSCHIRHART
        Texas State Bar No. 24013655
        LOWELL F. DENTON
        Texas State Bar No. 05764700

        *Attorneys for Appellants*
        *Edward Trevino, II, John Siemens*
        *and Alexander Wright*

## CERTIFICATE OF SERVICE

I hereby certified that on this the 7TH day of June 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system, which automatically provided notice to the following CM/ECF participants:

Anya Bidwell
Will Aronin
Patrick Jaicomo
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203

*Attorneys for Appellee*
*Sylvia Gonzalez*

        s/ *Scott Michael Tschirhart*
        SCOTT M. TSCHIRHART

46

## CERTIFICATE OF COMPLIANCE

1.     This document complies with Fed. R. App. P. 25 and 5th CIR. R. 30.14.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-styled requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 docx, in 14-point in Times New Roman for body.


s/ *Scott Michael Tschirhart*
SCOTT M. TSCHIRHART

47