CASE NO. 21-50276

*In The*

# United States Court of Appeals

*For The Fifth Circuit*

## SYLVIA GONZALEZ,

*Plaintiff – Appellee*,

v.

## EDWARD TREVINO, II, Mayor of Castle Hills, sued in his individual capacity; JOHN SIEMENS, Chief of the Castle Hills Police Department, sued in his individual capacity; ALEXANDER WRIGHT, sued in his individual capacity,

*Defendants – Appellants*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS, SAN ANTONIO DIVISION,
NO. 5:20-CV-01151, HONORABLE DAVID ALAN EZRA, PRESIDING

———

## BRIEF OF APPELLEE

———

**Anya Bidwell,** *Lead Counsel*
**Patrick Jaicomo**
**William Aronin**
**INSTITUTE FOR JUSTICE**
**901 North Glebe Road, Suite 900**
**Arlington, Virginia  22203**
**(703) 682-9320**
**abidwell@ij.org**
**pjaicomo@ij.org**
**waronin@ij.org**

*Counsel for Appellee*

## CERTIFICATE OF INTERESTED PERSONS

(1)    Case Number 21-50276: *Gonzalez v. Trevino, et al.*

(2)    The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

| Defendants–Appellants | Counsel for Defendants–Appellants |
|---|---|
| Edward Trevino, II; John Siemens; and Alexander Wright | DENTON NAVARRO ROCHA BERNAL & ZECH Scott Michael Tschirhart Lowell F. Denton |

| Plaintiff–Appellee | Counsel for Plaintiff–Appellee |
|---|---|
| Sylvia Gonzalez | INSTITUTE FOR JUSTICE Anya Bidwell Patrick Jaicomo William Aronin |

/s/ Anya Bidwell
*Lead Counsel for Plaintiff–Appellee*

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff Sylvia Gonzalez respectfully requests oral argument. As demonstrated by the Appellants' opening brief, which misunderstands the nature of the probable-cause inquiry in First Amendment retaliation claims, there is a need for this Court to provide guidance on the *Nieves v. Bartlett* exception to the general rule that a plaintiff cannot make a retaliatory arrest claim without first pleading and proving the absence of probable cause. 139 S. Ct. 1715 (2019). Oral argument may assist the Court in this task.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ................................................ i

STATEMENT REGARDING ORAL ARGUMENT ........................................ ii

TABLE OF CONTENTS ................................................................................ iii

TABLE OF AUTHORITIES ........................................................................... v

INTRODUCTION .......................................................................................... 1

STATEMENT OF THE CASE ....................................................................... 3

    I.    Factual Background ................................................................................ 3

        A.    Retaliation Campaign: The Investigation ......................... 4

        B.    Retaliation Campaign: The Arrest ................................... 6

        C.    Retaliation Campaign: The Removal from Office ............. 7

    II.    Proceedings Below .................................................................... 9

SUMMARY OF THE ARGUMENT ................................................................ 11

STANDARD OF REVIEW ......................................................................... 13

ARGUMENT ................................................................................................ 14

    I.    The district court correctly denied Appellants qualified immunity. ......................................................................................... 14

        A.    The district court correctly held that Sylvia has alleged a First Amendment violation. ............................. 15

        B.    The district court correctly held that probable cause cannot preclude Sylvia's First Amendment claim. .......... 16

1.    As the district court correctly recognized, probable cause was insufficient to explain the Appellants' adverse conduct. ...................................17

2.    As the district court correctly determined, there is objective evidence to show that Sylvia's speech was the reason for her arrest...................... 21

C.    The district court correctly held that Sylvia's First Amendment right was clearly established at the time of arrest. .......................................................... 25

II.    The district court correctly declined to apply the independent intermediary doctrine. ........................................30

CONCLUSION............................................................................... 33

CERTIFICATE OF SERVICE........................................................ 35

CERTIFICATE OF COMPLIANCE.............................................. 36

CERTIFICATE OF ELECTRONIC COMPLIANCE...................... 37

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Valdez,*
   845 F.3d 580 (5th Cir. 2016) ...................................................................14

*Backe v. LeBlanc,*
   691 F.3d 645 (5th Cir. 2017) ...................................................................13

*Bart v. Telford,*
   677 F.2d 622 (7th Cir. 1982) ................................................................. 26

*Bloch v. Ribar,*
   156 F.3d 673 (6th Cir. 1998) ................................................................. 26

*Buehler v. City of Austin,*
   824 F.3d 548 (5th Cir. 2016) ........................................................... 32, 33

*Campbell v. Mack,*
   777 F. App'x 122 (6th Cir. 2019) .......................................................... 25

*Connick v. Myers,*
   461 U.S. 138 (1983) ................................................................................15

*Curtis v. Sowell,*
   761 F. App'x 302 (5th Cir. 2019) ...................................................... 32, 33

*Garcia v. City of Trenton,*
   348 F.3d 726 (8th Cir. 2003) ................................................................. 26

*Goode v. Baggett,*
   811 F. App'x 227 (5th Cir. 2020) ..................................................... 29, 30

*Holcomb v. McCraw,*
   262 F. Supp. 3d 437 (W.D. Tex. 2017) ...................................................31

*Hand v. Gary,*
   838 F.2d 1420 (5th Cir. 1988) ............................................................... 30

*Hope v. Pelzer,*
    536 U.S. 730 (2002) ......................................................... 27, 28

*Joseph v. Bartlett,*
    981 F.3d 319 (5th Cir. 2020) ..................................................14

*Keenan v. Tejeda,*
    290 F.3d 252 (5th Cir. 2002)................................. 14, 15, 25, 26

*Kelson v. Clark,*
    ___ F.4th ___, 2021 WL 2472496
    (5th Cir. June 17, 2021) ......................................................13

*Lozman v. City of Riviera Beach,*
    138 S. Ct. 1945 (2018)..........................................................19

*Mazzeo v. Young,*
    510 F. App'x 646 (9th Cir. 2013)........................................... 25

*McCoy v. Alamu,*
    141 S. Ct. 1364 (2021) ........................................................ 28

*McLin v. Ard,*
    866 F.3d 682 (5th Cir. 2017) ........................................... 13, 31

*Meadours v. Ermel,*
    483 F.3d 417 (5th Cir. 2007) ............................................... 28

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985) ........................................................ 10, 13

*Morgan v. Swanson,*
    659 F.3d 359 (5th Cir. 2011) .................................................13

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,*
    429 US. 274 (1977)...............................................................15

*Nieves v. Bartlett,*
    139 S. Ct. 1715 (2019).................................................*passim*

*Pena v. City of Rio Grande City, Tex.*,
  816 F. App'x 966 (5th Cir. 2020) ............................................................ 29

*Ramirez v. Guadarrama*,
  __ F.4th __, 2021 WL 2690620
  (5th Cir. June 25, 2021) .................................................................... 27, 28

*Reichle v. Howards*,
  566 U.S. 658 (2012) ............................................................................ 20

*Roy v. City of Monroe*,
  950 F.3d 245 (5th Cir. 2020) ................................................................ 26

*Russell v. Altom*,
  546 F. App'x 432 (5th Cir. 2013) ...................................................... 32, 33

*Shaw v. Villanueva*,
  918 F.3d 414 (5th Cir. 2019) ................................................................ 31

*Taylor v. Riojas*,
  141 S. Ct. 52 (2020) ....................................................................... 27, 28

*Wilson v. Layne*,
  526 U.S. 603 (1999) ............................................................................ 26

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. I ..................................................................*passim*

U.S. CONST. amend. IV.......................................................................31

## STATUTES

Tex. Gov't Code § 602.002(17) ............................................................. 7

Tex. Penal Code § 12.21 ...................................................................... 5

Tex. Penal Code § 37.10(c)(1) ......................................................... 5, 22

## INTRODUCTION

When Plaintiff-Appellee Sylvia Gonzalez ("Sylvia") exercised her First Amendment right to criticize her local government, Defendants-Appellants Trevino, Wright, and Siemens, along with municipal Defendant Castle Hills, Texas, (collectively "Defendants") launched a campaign of harassment and intimidation that included Sylvia's arrest on pretextual grounds. The Bexar County District Attorney's Office ("D.A."), upon learning of Defendants' actions, promptly dropped the charges and Sylvia sued under Section 1983 to vindicate her First Amendment right to be free from retaliatory harassment.

Appellants Trevino, Wright, and Siemens now seek to shield themselves from that lawsuit by invoking the doctrine of qualified immunity. But the district court properly denied Appellants qualified immunity, correctly holding that Sylvia's First Amendment right was clearly established and that even if probable cause existed for Sylvia's arrest, it does not preclude her claim. The U.S. Supreme Court's precedent—*Nieves v. Bartlett*, 139 S. Ct. 1715 (2019)—is dispositive on both points. Government officials should know that arresting people for their views is impermissible.

Appellants attempt to escape from *Nieves*'s clear guidance by arguing that the district court should have dismissed Sylvia's First Amendment claim

under this Circuit's "independent intermediary doctrine." Under this doctrine, if probable cause is determined by an independent intermediary—as was the case here with a magistrate judge—then even if the arrest were improper, the officers are shielded from liability. But the doctrine is not relevant here, precisely because Sylvia's retaliation claim falls within the *Nieves* exception. Under that exception, Sylvia may still assert a First Amendment retaliation claim, regardless of whether probable cause existed for her arrest, so long as two conditions are met. First, the existence of probable cause must be insufficient to explain the severity of the government's conduct toward her. Second, there must be objective evidence to show that Sylvia was arrested when others—similarly situated but not engaged in the same sort of protected speech—would not have been. Since Sylvia has met her burden as to both conditions, the existence of probable cause is irrelevant. And, thus, whether probable cause was determined by an independent intermediary is also irrelevant.

This Court should affirm the district court's denial of the motion to dismiss and allow Sylvia's claim against Appellants proceed to discovery.

## STATEMENT OF THE CASE

### I.    Factual Background

In the spring of 2019, Sylvia was a retired 72-year-old who wanted to give back to her community by running for a seat on the city council in her home, Castle Hills, Texas. ROA.6–7; ROA.9. She won on the promise that she would shake up the status quo by championing a non-binding political petition calling for the removal of the city manager. ROA.9; ROA.205. After Appellants learned about Sylvia's efforts to spearhead the petition, they designed and executed a successful plan to punish and intimidate Sylvia in retaliation for her First Amendment activities. ROA.9; ROA.17.

As explained in more detail below, this campaign of harassment included Sylvia's arrest on a charge of stealing the nonbinding petition she herself championed. The campaign also involved an intrusive and prolonged investigation leading to the charge, as well as various attempts to remove Sylvia from her council seat. ROA.16–28.

The Bexar County District Attorney, upon learning about the charge, promptly dismissed it, and a state court judge issued a temporary restraining order allowing Sylvia to remain in her seat. Yet Appellants fully succeeded in their ultimate goal of silencing and intimidating Sylvia. ROA.28; *see also* ROA.24–26; ROA.26–27. Sylvia has been so traumatized by the experience that she will never again help organize a petition or participate in any other

public expression of her political speech. She will also never again run for political office. ROA.7.

## A.    Retaliation Campaign: The Investigation

After Appellants learned about Sylvia's plans to champion a petition criticizing the city manager, they engineered a prolonged and intrusive investigation based on a manufactured charge that Sylvia tried to steal that very petition. ROA.16–18. The alleged charge—tampering with a governmental record—arose out of the mere fact that the petition (a nonbinding document) got misplaced from Appellant Trevino's papers into Sylvia's while the two sat next to each other during a council meeting. ROA.14–16. As soon as Sylvia learned that the petition was in her files— which was on the same day, minutes after the meeting—she gave it back. ROA.16. The petition never even left the room. ROA.16. There is no evidence that Sylvia intended to steal her own petition, or even that she was aware the petition had been misplaced. Still, this event prompted one of Appellants, Mayor Trevino, to task another Appellant, Police Chief Siemens,[1] with investigating Sylvia. ROA.14–16.

The police officer to whom Appellant Siemens assigned the matter failed to find a charge for Sylvia's arrest. Undeterred, Siemens turned to a

---

[1] Upon information and belief, Police Chief Siemens is no longer employed with the Castle Hills police department.

4

local attorney and sometimes police officer—the third Appellant, Special Detective Wright—to take over the investigation. ROA.19. A month into this investigation, Appellant Wright drafted a criminal complaint and a warrant for Sylvia's arrest. And—circumventing the district attorney—Wright walked the warrant directly to a judge. ROA.19–20.

Wright's complaint accused Sylvia of stealing the nonbinding petition. ROA.21. The next day, Sylvia was charged with a Class A misdemeanor for "Tampering with Governmental Record" and arrested. ROA.19 (citing Tex. Penal Code § 37.10(c)(1)). Class A is the highest class of misdemeanor under Texas law, and the most severely punished. Had Sylvia been convicted of this charge, she could have faced thousands of dollars in fines and up to a year in a county jail. Tex. Penal Code § 12.21.

Sylvia's arrest was unprecedented. A review of felony and misdemeanor data from Bexar County over the past decade shows that the statute used to charge Sylvia—Texas Penal Code § 37.10(c)(1) (tampering with a government record)—has never been used in Bexar County to criminally charge someone for trying to steal a nonbinding or expressive document. ROA.22. Of 215 grand jury felony indictments obtained under the tampering statute, not one had an allegation even remotely resembling the one mounted against Sylvia. ROA.22. Instead, the indictments mostly

involved accusations of either intentionally misusing financial information or making fake government identification documents. ROA.22; *see also* ROA.184 (citing to the complaint). The misdemeanor data tells the same story: The alleged tampering in those cases typically involved intentional use of fake social security numbers, driver's licenses, and green cards. ROA.22; *see also* ROA.185 (citing the complaint).

## B.    Retaliation Campaign: The Arrest

But Appellants did not stop at bringing this unprecedented charge against Sylvia; they also ensured that Sylvia would be arrested, rather than simply having to appear in court before a judge. ROA.20.

The Appellants' circumvention of the district attorney was critical in this effort. First, it is unlikely that the D.A. would have ever issued a warrant for Sylvia's arrest; for nonviolent offenders with no criminal record, issuing summonses is the typical route. ROA.20. Further, if the D.A. had been involved in issuing the warrant, Sylvia could have avoided jail by taking advantage of the Bexar County satellite booking function, encouraged and available for nonviolent offenders to reduce the overcrowding of jails. ROA.20.

Instead, because the warrant was intentionally not obtained through the D.A.'s office, it was hidden from the satellite office's computer system,

leaving Sylvia with no option other than jail. ROA.20. Thus, Appellants ensured that Sylvia—then 72 and with not as much as a traffic offense to her name—had to turn herself in and spend a terrifying day in jail. ROA.23. She was forced to wear orange jail garb, use a doorless bathroom, and have her mugshot taken and shown all across TV stations in her community. ROA.171; *see also* ROA.20–23. Given that the most typical route for individuals who are not a flight risk and who are accused of a nonviolent offense would have been an issuance of a summons or a processing through a satellite booking function, and given that Appellants had to reach to ensure Sylvia experienced confinement, with all the treatment and stigma that it implied, nothing—other than a retaliatory animus—could have motivated their actions.

## C.    Retaliation Campaign: The Removal from Office

Finally, Appellants tried repeatedly to strip Sylvia of her council seat. For example, the city attorney, allied with the Appellants, argued that Sylvia had not been properly sworn in by a sheriff, because, according to the Texas Government Code, sheriffs may only administer oaths when (1) they are engaged in performance of their duties and (2) the administration of the oath related to these duties. Tex. Gov't Code § 602.002(17). Swearing in a council member, they claimed, was not a part of a sheriff's duties. Yet other council members previously sworn in by sheriffs served out their terms without

incident. ROA.25. Indeed, Appellant Trevino himself would have been vulnerable to the same argument, having been sworn in by a commissioner who, like sheriffs, could do so only when engaged in performance of his duties. ROA.25. Ultimately, it took a state court judge issuing a temporary restraining order to allow Sylvia to keep her seat. ROA.26.

In another effort to unseat Sylvia, six private individuals close to Mayor Trevino sued to remove Sylvia for incompetence and official misconduct. ROA.26–27. The suit argued that because of her pending criminal charge— that is, the charge that Appellants orchestrated against her—Sylvia was no longer competent to serve as a councilmember. ROA.26–27. Making no secret of their political motives, the plaintiffs refused to dismiss the case unless Sylvia signed an affidavit "stating that she would never again run for city council." ROA.27–28. It was not until the district attorney's office got involved that the case was finally dismissed. ROA.27 (stating the D.A.'s view, "after a careful and independent investigation," that "neither the criminal charges against [Sylvia] nor this Chapter 21 removal action should proceed").

Despite being initially unsuccessful at removing Sylvia, Appellants and their allies continued with both lawsuits, causing Sylvia to give up her seat. ROA.28. She is no longer on the city council and will not run again. ROA.28.

## II.    Proceedings Below

Sylvia filed her First Amendment complaint in September 2020. ROA.6. She presented two retaliatory arrest claims: the first against Appellants Trevino, Siemens, and Wright, ROA.30, and the second against the City of Castle Hills. ROA.33. Both claims sought to vindicate Sylvia's First Amendment right to speak out against the government and be free from retaliation. In her complaint, Sylvia presented detailed allegations of a harassment campaign, which included her arrest. Those allegations—taken as true—established that, had it not been for Sylvia's speech, this harassment campaign would have not occurred.

Defendants moved to dismiss both of Sylvia's claims. Appellants Trevino, Siemens, and Wright argued that they were entitled to qualified immunity. ROA.103–106. The City of Castle Hills argued that Sylvia's complaint did "not contain sufficient factual allegations to support a *Monell* claim." ROA.106–109.

The District Court for the Western District of Texas denied Defendants' motion to dismiss. In doing so, the court reached four conclusions relevant to this appeal. First, the court held that Sylvia properly alleged a violation of a constitutional right and that this right was clearly established, allowing the claim against Appellants Trevino, Siemens, and Wright to move forward

despite their invocation of qualified immunity. ROA.190. Second, it held that Sylvia "adequately pled all of the requirements for her *Monell* claim" against the Castle Hills, letting the claim against the municipality also proceed. ROA.201. Third, it held that even if probable cause existed to believe that Sylvia had "tampered" with her own petition, that fact alone would not preclude the claims either against Appellants or Defendant Castle Hills. ROA.177–181. Finally, the court held that this Circuit's "independent intermediary doctrine" was inapplicable, even though the probable cause, in Sylvia's case, was determined by a magistrate judge. Instead, the *Nieves* exception applies to Sylvia's First Amendment claims and she has a right to sue even if there had been a probable cause for her arrest. ROA.175–177; ROA.182–185.

Following the district court's judgment, and pursuant to *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985), Appellants filed a notice of interlocutory appeal of the qualified immunity judgment. ROA.220. The claim against Castle Hills—along with discovery in the case—was stayed, pending this Court's review. ROA.223.

## SUMMARY OF THE ARGUMENT

Appellants were upset about Sylvia's political speech, so they had her investigated and arrested, and twice tried to remove her from the city council. The district court correctly held that qualified immunity does not shield these actions from judicial scrutiny. As that court held—and as explained below—Sylvia properly pleaded her clearly established right to speak free from government retaliation, and there is nothing that prevents a federal court from resolving that claim.

First, Sylvia properly alleged that Appellants unconstitutionally retaliated against her because of her constitutionally protected speech. *See* Part IA, *infra*. Had it not been for Appellants' retaliatory animus toward her, Sylvia would have never been subjected to the harassment campaign that included her arrest.

Second, Sylvia has shown that the existence of probable cause to believe she had illegally "tampered" with her own petition would not preclude her claim. Although probable cause will often defeat a First Amendment retaliation claim, the Supreme Court in *Nieves v. Bartlett* identified an exception to that rule when a plaintiff presents "objective evidence that [s]he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."

*Nieves*, 139 S. Ct. at 1727. The unprecedented nature of Sylvia's arrest—along with other objective evidence of retaliatory animus—places her claim squarely within that exception. *See* Part IB, *infra*.

Third, Sylvia met her burden to show that her right to be free from retaliatory harassment, including her arrest, was clearly established. This is shown not only by the *Nieves* decision itself, but also by this Court's precedent. This binding caselaw gives government officials ample notice—if it were not already obvious—that organizing a harassment campaign to punish and silence a person whose political advocacy they disagree with is unconstitutional. *See* Part IC, *infra*.

Finally, the district court also correctly held that the independent intermediary doctrine is irrelevant to Sylvia's First Amendment claim. *See* Part II, *infra*. Because Sylvia's claim falls into the *Nieves* exception to the ordinary rule that probable cause will defeat a retaliation claim, the existence of probable cause is beside the point and thus it does not matter whether the finding of probable cause was made by Appellants or by an independent intermediary, like a magistrate judge. *See id*. The court's determination accords with the Fifth Circuit's caselaw on retaliatory arrests. *Id*.

The district court's judgment should be affirmed.

## STANDARD OF REVIEW

This Court reviews the district court's denial of a motion to dismiss de novo. *Kelson v. Clark*, ___F.4th___, 2021 WL 2472496, at *2 (5th Cir. June 17, 2021) (citing *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017)). All well-pleaded facts "must be accept[ed] as true" and "all reasonable inferences [must be drawn] in favor" of the nonmoving party—in this case, Sylvia. *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc). "Though the complaint need not contain detailed factual allegations, it must contain sufficient factual material that, accepted as true, allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kelson*, 2021 WL 2472496 at *2 (cleaned up).

Qualified immunity is before this Court on an interlocutory review from the denial of a motion to dismiss. *See Mitchell*, 472 U.S. at 530. To determine if qualified immunity applies, the Court must look closely at the complaint to ensure that the plaintiff pleaded "specific facts that both allow the court to draw a reasonable inference that the defendant is liable for the harm . . . alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2017).

To rule on qualified immunity, this Court considers whether "the facts alleged, taken in the light most favorable to the party asserting the injury,

show that the officers' conduct violated a constitutional right." *Keenan v. Tejeda*, 290 F.3d 252, 261 (5th Cir. 2002) (citation omitted). The Court also must assess "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (citation omitted). The law can be clearly established even if notable factual distinctions between the precedents exist, "so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Anderson v. Valdez*, 845 F.3d 580, 600 (5th Cir. 2016). It is this Court's practice to take these two questions in order, answering first whether a constitutional right was violated and second whether this right was clearly established. *Joseph v. Bartlett*, 981 F.3d 319, 331 n.40 (5th Cir. 2020).

## ARGUMENT

## I.    The district court correctly denied Appellants qualified immunity.

The district court correctly held that Sylvia has sufficiently alleged that Appellants "violated [her] constitutional right[]" to be free from First Amendment retaliation and that Sylvia's claim is not precluded by probable cause. ROA.190. The district court also correctly held that, at the time Sylvia "was arrested, this right was clearly established." ROA.190–191. As a result, Appellants "have not shown that they are entitled to qualified immunity." ROA.193. The district court's ruling should be affirmed.

**A.    The district court correctly held that Sylvia has alleged a First Amendment violation.**

In this country, when individuals criticize government officials, their actions are constitutionally protected. *Connick v. Myers*, 461 U.S. 138, 145 (1983). Government officials are not "permitted to impose serious penalties in retaliation for an individual's speech," otherwise they "would be able to stymie or inhibit [the individual's] exercise of rights in the future and thus obtain indirectly a result that [they] could not command directly." *Keenan*, 290 F.3d at 258; *see also Nieves*, 139 S. Ct. at 1722.

If government officials do penalize a disfavored speaker—and if there exist no valid, nonretaliatory grounds that would otherwise justify those penalties—the injured speaker may seek relief by filing a First Amendment retaliation claim. To succeed on that claim, the speaker must show a "causal connection between the government defendants' retaliatory animus and the plaintiff's subsequent injury." *Nieves*, 139 S. Ct. at 1722 (cleaned up); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 US. 274, 283–84 (1977).

As the district court held, Sylvia properly alleged every element of her retaliation claim. ROA.190. She engaged in a protected activity by championing a petition criticizing her government. ROA.190. As a result of this, she suffered a severe penalty: a campaign of harassment that included an arrest for a nonviolent misdemeanor. ROA.190. Sylvia also sufficiently

alleged that had it not been for an intent to deter and punish her for her political speech, Appellants would have never engaged in their retaliation campaign. ROA.190. Among other things, Sylvia pleaded that the criminal charge against her has never been applied to any person similarly situated to Sylvia. ROA.190. Instead, the law is applied to individuals who are accused of intentionally creating fake government documents, such as green cards, social security numbers, or driver's licenses. It is also applied in circumstances of intentionally misusing financial information. It is not applied to individuals who accidentally put a nonbinding petition they themselves championed in a wrong pile and, after being told about it, correcting the error. Taking these facts as true—as must be done at this stage—Sylvia has adequately pleaded her First Amendment retaliation claim.

### B.   The district court correctly held that probable cause cannot preclude Sylvia's First Amendment claim.

Although plaintiffs bringing retaliatory arrest claims must ordinarily plead and prove the absence of probable cause for their arrest, the district court correctly held that this requirement did not apply here. ROA.184. That's because Sylvia's case falls into an exception to this rule identified in the Supreme Court's ruling in *Nieves*. Under this exception, the mere existence of probable cause will not defeat a retaliation claim if two conditions are met. First, a plaintiff must show that the mere existence of

probable cause was insufficient to provoke the government's reaction. *Nieves*, 139 S. Ct. at 1727. Second, the plaintiff must provide objective evidence showing that a plaintiff was arrested, even though "otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id*. Sylvia has alleged facts sufficient to satisfy both requirements.

### 1.    As the district court correctly recognized, probable cause was insufficient to explain the Appellants' adverse conduct.

To seek relief in a First Amendment retaliation case, a plaintiff must plead that a defendant's retaliation was driven by an improper motive, such as a desire to silence or intimidate. *Nieves*, 139 S. Ct. at 1722; Part IA, *supra*. In retaliatory arrest cases, courts also generally require a plaintiff to establish the absence of probable cause, since, as a general rule, "probable cause speaks to the objective reasonableness of an arrest." *Nieves*, 139 S. Ct. at 1724. In other words, to state a retaliatory arrest claim, a plaintiff must show that the government had no valid, nonretaliatory reason that would have justified the arrest.

*Nieves v. Bartlett*—the case that formally announced the probable-cause rule in retaliatory arrest cases—is a good illustration. There, Plaintiff Bartlett—heavily intoxicated and belligerent—was briefly arrested by two officers during an alcohol-fueled festival for urging some of the attendees,

partying at 1:30 in the morning, to "not speak with the police" when the officers asked them to move their beer keg inside their RV. Several minutes later, and in similarly belligerent manner, Bartlett also told one of the officers to not question a minor about his underage drinking. *Id.* at 1720–21. Based on his disruptive behavior, the officers charged Bartlett under a disorderly conduct statute that is generally used to arrest people, who, like Bartlett, impede police officers in their work. The Supreme Court held that the existence of probable cause to believe that Bartlett had violated the disorderly conduct statute was reason enough for his arrest, precluding his First Amendment retaliation claim. *Id.* at 1723.

The Court in *Nieves* believed that this probable cause rule was necessary to address the "special challenges" to law enforcement that arise in a "typical retaliatory arrest claim." *Id.* In such cases, probable cause serves as a useful proxy for whether the law enforcement's actions were legitimate. *Nieves*, 139 S. Ct. at 1720, 1722. After all, "officers must frequently make split-second judgments when deciding whether to arrest, and the content and manner of a suspect's speech may convey vital information—for example, if he is ready to cooperate or rather presents a continuous threat." *Id.* at 1724 (cleaned up). The existence of probable cause to believe a crime has been committed provides an objective—though imperfect—means of

distinguishing justifiable arrests from retaliatory harassment. *Id.* at 1723. So in the case of Mr. Bartlett, whose arrest occurred after his disruptive speech interfered with police officers' work, the existence of probable cause was enough to preclude Bartlett's First Amendment claim. *Id.* at 1724–25.

Sylvia's case—as alleged—does not present these "special challenges" associated with typical retaliatory arrest claims. To begin with, the choice to arrest Sylvia did not involve on-the-spot decision-making, like the arrest at issue in *Nieves*. ROA.32. Appellant Siemens reached out to one of his officers with regard to the filing of a criminal complaint against Sylvia two days after the incident, ROA.18, and it took almost two months to lead to the arrest. ROA.23. As the district court recognized, the arrest itself was part of a deliberate, long-term, and pervasive effort to intimidate and silence Sylvia, including by investigating her and by attempting to remove her from a city council. ROA.179; *see also* ROA.17-28. This evidence of a retaliatory animus, outside of the arrest itself, significantly diminishes probable cause as an explanation for her arrest. *See Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1953–54 (2018) (describing a policy of harassment that culminated in an arrest as "far afield from the typical retaliatory arrest claim").

In addition, the speech at issue in *Nieves* was disagreeing with police and hindering police enforcement, so the speech was intertwined with the

charged crime, making the untangling of a proper and an improper motive difficult. *Nieves*, 139 S. Ct. at 1724; *see also Reichle v. Howards*, 566 U.S. 658, 672 (2012) (Ginsburg, J. concurring) (officers were "duty bound to take the content of [plaintiff's] statements into account in determining whether he posed an immediate threat to the Vice President's physical security."). Here, as Appellants admit, the speech and the crime were not intertwined. ROA.213 (admitting allegations in paragraph 104 of the complaint that "there was no need to examine Sylvia's speech in order to determine whether there was probable cause to arrest her for theft"). This makes the distinction between a proper and an improper motive for Sylvia's arrest, unlike for Bartlett's arrest, straightforward: Since there was no need to examine Sylvia's speech to determine probable cause for theft, if evidence shows that the speech was indeed considered to effectuate the arrest, it could have only been due to an improper motive. *See* ROA.17–28 (providing this evidence).

Finally, the allegation of Appellants' retaliatory animus is supported by the very fact that Sylvia—a 72-year-old woman with not as much as a hint of a criminal record—ended up in jail for allegedly committing a nonviolent misdemeanor. After months of intrusive investigation, all the Appellants could come up with was an allegation—unsupported by any evidence of intent—that Sylvia tried to steal a non-binding petition she herself

championed. ROA.14–16. For *that*, Appellants bypassed the D.A. and walked the warrant directly to a judge. ROA.20. By doing this, they ensured that, rather than being issued a summons, Sylvia would be issued a warrant, and that instead of her warrant being processed through a courtroom, she would have to go to jail to turn herself in, with all the trauma and embarrassment that implies. ROA.20.

These allegations place Sylvia's case squarely within the group of cases described by *Nieves*, where no probable-cause showing is necessary. These are the cases in which "officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves*, 139 S. Ct. at 1727. Jaywalking is a perfect example: If a police officer never arrests jaywalkers, except once, when the jaywalker is known for criticism of the police, that differential treatment is strong evidence that the arrest was triggered by the jaywalker's speech, not by the jaywalking itself. *Id.* And in that situation, the probable cause rule does not bar the First Amendment claim, lest the probable cause rule "come at the expense of [its] logic." *Id.*

> **2.    As the district court correctly determined, there is objective evidence to show that Sylvia's speech was the reason for her arrest.**

In cases like Sylvia's, where the mere existence of probable cause cannot show that the arrest was based on non-retaliatory grounds, plaintiffs

can move forward with their retaliation claims if they allege "objective evidence that [they were] arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* Under *Nieves*, the district court correctly concluded that the allegations in Sylvia's complaint met this burden. ROA.185.

For example, Sylvia alleged that "the misdemeanor offense for which she was charged," namely tampering with a government record under Texas Penal Code § 37.10(c)(1), "has 'never been used in Bexar County to criminally charge someone for trying to steal a nonbinding or expressive document.'" ROA.184 (citing to the complaint); *see also* ROA.22. To support these allegations, Sylvia provided a decade's worth of misdemeanor and felony data from Bexar County showing that, of 215 grand jury felony indictments obtained under the tampering statute, not one had an allegation even remotely resembling the one mounted against Sylvia. ROA.22. Again, most of the indictments involved accusations of either misusing financial information or making fake government identification documents. ROA.22. The misdemeanor data tell the same story: The alleged tampering typically involved the use of fake government documents like green cards and social security numbers. ROA.22.

The information collected from the Bexar County not only stands on its own, but also confirms the common knowledge and experience that people frequently misplace papers, including government documents, and do not get charged or arrested for it. As the data demonstrate, the tampering statute is used to go after individuals who intentionally misuse or forge binding government documents, not temporarily place nonbinding political petitions in the wrong pile. In other words, just like in the example with jaywalking, Sylvia made the required objective showing that she was arrested for a conduct that would have never resulted in an arrest, had it not been for Sylvia's political speech. The district court correctly found this evidence to be sufficient and let Sylvia's claims proceed to discovery. ROA.184.

Appellants dismiss these allegations of objective evidence, arguing that the exception set out in *Nieves* is available only when a plaintiff has alleged that the activity for which she was arrested is pervasive and that other individuals engaging in this activity were not arrested. App. Br. 10. That facially impossible standard presupposes the existence of records for non-arrests and would obliterate the *Nieves* exception, as no one would ever be able to prove a negative. For example, in *Nieves*'s own example with jaywalking, it would be impossible to find records of people who jaywalked but were not arrested. In any event, *Nieves* contains no such requirements.

23

Instead, the only requirement is objective evidence sufficient to lead a reasonable person to conclude that, had it not been for Sylvia's speech, her arrest would have not occurred, even in the presence of probable cause. *Nieves*, 139 S. Ct. at 1727. As the district court held, the detailed allegations in Sylvia's complaint satisfy this standard. ROA.190.

In sum, Sylvia's case falls squarely within the *Nieves* exception to the probable-cause rule. As a result, she properly alleged a violation of her First Amendment right, without the need to plead or prove probable cause. There is plenty of evidence to show that non-retaliatory grounds for Sylvia's arrest cannot sufficiently explain the Appellants' adverse conduct toward her. The government simply does not arrest people for mistakenly picking up pieces of paper that they themselves created. *See* Part IB1, *supra*. There is also plenty of objective evidence to show that individuals similarly situated to Sylvia, but not engaged in the same sort of protected speech, would have not been arrested. *See* Part IB2, *supra*. Finally, no "special challenges to law enforcement," such as split-second judgements, are present. *See* Part IB1, *supra*. As a result, in Sylvia's case, probable cause—even if determined by a third-party intermediary—is irrelevant. Sylvia has properly stated a violation of her First Amendment right.

**C.    The district court correctly held that Sylvia's First Amendment right was clearly established at the time of arrest.**

Besides sufficiently alleging the existence of a constitutional right to be free from First Amendment retaliation and that this right is not precluded by probable cause, Sylvia also met her burden to show that this right was clearly established at the time Appellants violated her rights. ROA.192–193.

*Nieves* clearly establishes Sylvia's constitutional right. Under that decision, *see* Part 1B, *supra*, speakers have a right to be free from retaliatory arrest as long as they can present objective evidence that "non-retaliatory grounds [we]re in fact insufficient to provoke the [arrest]," even if probable cause existed for their arrest. *Id.* at 1727. *Nieves* provided all reasonable officials fair notice that they cannot hide behind probable cause when they single out a disfavored speaker for arrest because of disagreement with their constitutionally protected speech. *Id.*

This Court's caselaw accords with *Nieves* and similarly provides reasonable officials with fair warning that police harassment in retaliation for speech is unconstitutional.[2] In *Keenan*, for example, plaintiffs

---

[2] Other circuits too have clearly established that retaliatory harassment, including by utilizing police, is unconstitutional. *See, e.g., Campbell v. Mack*, 777 F. App'x 122, 135 (6th Cir. 2019) (finding that a jury could conclude that officer purposefully tightened plaintiff's handcuffs and performed a strip/cavity search because of plaintiff's protected speech); *Mazzeo v. Young*, 510 F. App'x 646, 648 (9th Cir. 2013) (finding law clearly established that sheriffs may not engage in a "campaign of harassment and humiliation"

(themselves police officers) alleged that they were harassed by police officers in retaliation for speaking out against corruption in the constable's office. 290 F.3d at 256–57. This harassment campaign involved holding the plaintiffs at gunpoint during a traffic stop and detaining them for over thirty minutes, and also—during a separate incident—arresting one of the plaintiffs on a misdemeanor "deadly conduct" charge. *Id.* at 257, 259. This Court made clear that the First Amendment prohibits "adverse governmental action against an individual in retaliation for the exercise of protected speech activities," allowing the case to proceed. *Id.* at 258, 261.[3]

---

or "coercion, persuasion, and intimidation" in retaliation for protected speech (alterations omitted)); *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003) (concluding that mayor "engaged the punitive machinery of government in order to punish" plaintiff for her protected speech where the mayor instructed police to ticket her for parking in a spot past two-hour limit though the police rarely issued such parking tickets); *Bloch v. Ribar*, 156 F.3d 673, 676, 679–80 (6th Cir. 1998) (denying qualified immunity where officer publicly shared embarrassing details regarding plaintiff's rape claim in retaliation for protected speech); *Bart v. Telford*, 677 F.2d 622, 624 (7th Cir. 1982) (finding retaliatory actions where mayor "orchestrated a campaign of petty harassments designed to punish [plaintiff] for having run for public office"). Together, these circuits make up an additional "consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999).

[3] Because *Keenan* was decided without the benefit of *Nieves*, it required the no-probable-cause showing in order to proceed on the retaliatory arrest claim. *Nieves* clarified that when there is "objective evidence that [plaintiff] was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been," *see* Part IB2, *supra*, an arrest is unconstitutional, with or without probable cause. *Nieves*, 139 S. Ct. at 1727; *see also Roy v. City of Monroe*, 950 F.3d 245, 255 n.4 (5th Cir. 2020) (declining to relax the probable cause requirement in applying the qualified immunity standard because the plaintiff failed to argue that the *Nieves* probable-cause exception applied and there was also no such showing in the record).

Appellants make much ado about the proper timing for the "clearly established" requirement. They apparently claim that the two-month period following *Nieves*[4]—then the highest profile retaliatory arrest case in the country—was too short to put government officials on notice that they can't obviously single out their critics for retaliation. App. Br. 17, 19. The district court correctly dismissed this argument. ROA.192. Even if Appellants' harassment campaign began before *Nieves*, Appellants always had a choice to stop their harassment campaign after they learned—from *Nieves*—that it was clearly unconstitutional. They chose not to do so, proceeding with the arrest instead. Their conduct cannot be shielded by qualified immunity.[5]

Even without *Nieves*, it would have been obvious to any reasonable official that designing and executing a broad-ranging strategy to punish and intimidate someone for engaging in a protected activity "offended the Constitution." *Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020); *see also Ramirez v. Guadarrama*, ___ F.4th ___, 2021 WL 2690620, at *8 (5th Cir. June 25, 2021)

---

[4] *Nieves* was decided on May 28, 2019, and Sylvia was arrested on July 18, 2019.

[5] The argument on the timing of the clearly established law also points to the mismatch between the idea behind qualified immunity, which is "fair warning," *Hope v. Pelzer*, 536 U.S. 730, 741 (2002), and the way qualified immunity is applied, which is the reliance on the timing of a publication of a relevant case. A true "fair warning" test would probe into what these *particular* government officials knew about the unconstitutionality of the challenged conduct. In that regard, pre-*Harlow* caselaw would help answer this question with more precision. Sylvia does not rely on this argument to overcome the clearly established challenge there. But she mentions this to preserve the question of what it means for an official to be fairly warned for possible review by the U.S. Supreme Court.

(Oldham, J. concurring in denial of en banc review) (stating that Supreme Court orders in *Taylor* and *McCoy v. Alamu*, 141 S. Ct. 1364 (2021) are "particularly remarkable because they are the Court's first- and second-ever invocations of the obvious-case exception to the clearly established law requirement"). After all, "a general constitutional rule already identified in the decision law may apply with obvious clarity to the specific conduct in question." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *see also Ramirez*, 2021 WL 2690620, at *16 (Willett, J. dissenting from denial of en banc review) (stating that the Supreme Court views *Hope* not as an anomaly but a "course correction signaling lower courts to deny immunity for clear misconduct, even in cases with unique facts").

Appellants also complain that the district court improperly "grouped the individual Appellants together" in its qualified immunity analysis. App. Br. 13. But here, too, the district court was right. Under this Circuit's precedent, although courts must consider each governmental official's actions separately when evaluating qualified immunity, "[s]eparate consideration does not require courts to conduct a separate analysis for each officer in those cases where their actions are materially indistinguishable, it merely requires them to *consider* each officer's actions." *Meadours v. Ermel*, 483 F.3d 417, 421–22 n.3 (5th Cir. 2007) (emphasis in original); *see also*

*Goode v. Baggett*, 811 F. App'x 227, 237 (5th Cir. 2020); *Pena v. City of Rio Grande City, Texas*, 816 F. App'x 966, 973 n.10 (5th Cir. 2020).

Here, the district court "thoroughly discuss[ed] the facts" and considered *each* defendant's actions for qualified immunity purposes. *Goode*, 811 F. App'x at 237. It considered and set forth the factual allegations in detail, thoroughly describing each Appellant's actions.

These allegations included that "Mayor Trevino tasked Police Chief Siemens with investigating and charging her for a criminal offense," that "Siemens assigned a full-time police officer to investigate Plaintiff and her petition," later switching the task to Appellant Wright, and that "[a]fter a month-long investigation, Wright brought one misdemeanor charge against Plaintiff for tampering with a government record for allegedly attempting to steal the petition. ROA.170–171.

The district court also considered the allegations that Appellants used a made-up technicality to strip Sylvia—but not Appellant Trevino—of her city council seat, despite the fact that the technicality would have just as easily applied to Trevino himself. ROA.171. When that failed, the district court explained, Appellants had several of Trevino's allies file a civil suit against Sylvia, and conditioned dismissal on Sylvia "signing an affidavit stating that she would never run for city council again." ROA.172.

Having thoroughly considered the alleged facts as they pertain to each individual defendant, *Goode*, 811 F. App'x at 237, the district court determined that Sylvia had properly alleged that each defendant "participat[ed] in a scheme" to retaliate against Sylvia in clear violation of the First Amendment as set forth in *Nieves*. ROA.192–193. The district court properly held that qualified immunity did not shield Appellants from Sylvia's First Amendment retaliation claim.

## II. The district court correctly declined to apply the independent intermediary doctrine.

Rather than engage with the *Nieves* exception to the probable-cause rule, Appellants continue to insist that the independent intermediary doctrine prevents Sylvia from proceeding with her First Amendment claim against them. App. Br. 7–9. According to this doctrine, "even an officer who acted with malice . . . will not be liable if the facts supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's independent decision breaks the causal chain and insulates the initiating party." *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988) (cleaned up).

In Appellants' view, a magistrate judge's signing of the warrant for Sylvia's arrest insulates them from accountability for violating Sylvia's rights. *Id.* But the district court correctly rejected this argument. ROA.177. Under

*Nieves*, even if probable cause did exist for Sylvia's arrest and even if it were determined by an independent intermediary, her claim can still proceed.

In making their case for applying the independent intermediary doctrine, Appellants rely mainly on this Court's ruling in *Shaw v. Villanueva*, 918 F.3d 414 (5th Cir. 2019). But that case did not even deal with the First Amendment. Instead, *Shaw* was a Fourth Amendment false arrest case, where the existence of probable cause, as determined by an independent intermediary, prevented the claim from moving forward. *Id.* at 417. *Shaw* said nothing about cases like Sylvia's—where, under the *Nieves* exception, a First Amendment retaliation claim may proceed even when probable cause exists. *See* Part IB, *supra*. As such, probable cause—whether or not it is determined by an independent intermediary—is irrelevant.

Another case featured prominently in the opening brief is *McLin v. Ard*, 866 F.3d 682 (5th Cir. 2017). Again, though, the independent intermediary doctrine was analyzed there only in the context of the Fourth Amendment claim, and the First Amendment claim was dismissed on a separate ground: a failure to plead that "Defendants' retaliatory conduct actually curtailed his speech." *Id.* at 696; *see also Holcomb v. McCraw*, 262 F. Supp. 3d 437 (W.D. Tex. 2017) (cited by Appellants, App. Br. 9, but also not dealing with the First Amendment claim).

It is certainly true—and the district court correctly points this out—there are pre-*Nieves* cases in which this Court has required plaintiffs—in order to press their First Amendment claims—to establish that no probable cause existed. ROA.177 n.3. If probable cause did exist—for example through a determination by an independent intermediary—then the claims, including First Amendment claims, were dismissed. *Curtis v. Sowell*, 761 F. App'x 302, 305 (5th Cir. 2019); *Buehler v. City of Austin*, 824 F.3d 548, 554 (5th Cir. 2016); *Russell v. Altom*, 546 F. App'x 432, 436–37 (5th Cir. 2013). But, as the district court correctly determined, these cases predate *Nieves*, ROA.177. And, to the extent these cases may be inconsistent with *Nieves*'s exception for cases in which disfavored speakers are singled out for retaliatory treatment, *Nieves* controls.[6, 7]

---

[6] *Buehler* and *Russell* fall squarely within the *Nieves* rule that when "it is particularly difficult to determine whether the adverse government action was caused by the officer's malice or the plaintiff's potentially criminal conduct," plaintiffs must show the absence of probable cause. *Nieves*, 139 S. Ct. at 1724. In *Buehler*, a bystander was arrested on multiple occasions after interfering with police duties by aggressively filming them, refusing to keep distance, and yelling profanities. *Id*. at 551–53. *Russell*, similarly, involved a situation where the plaintiff was disrupting government work by assertively photographing a tree-trimming crew in dangerous proximity, causing them to stop working. *Russell*, 546 F. App'x at 434. In both cases, there was plenty of evidence to untangle the existence of probable cause from the retaliatory motive. As a result, while Buehler and Russell were required to show the absence of probable cause, Sylvia is not. Consequently, while the existence of an independent intermediary might matter for Buehler and Russell, it does not for Sylvia.

[7] The third case cited by the district court—*Curtis*—is an outlier. It is an unpublished case that deals with a curious claim by a plaintiff that he was arrested because "his attorney published writings criticizing the conduct of various Appellees." 761 Fed. Appx. at 305. Given that the plaintiff failed to allege any evidence—objective or otherwise—to show that the probable case for his arrest was insufficient to provoke the adverse consequences, it is no surprise that this Court rejected his claim. *Id*.

In any event, the district court was correct not to consider these cases because none implicated the *Nieves* exception, let alone involved a situation in which the plaintiff had provided objective evidence of retaliatory enforcement as Sylvia has done here. Thus, allowing Sylvia's claim to move forward would not conflict with *Buehler*, *Russell*, or *Curtis*, as those cases would fall within *Nieves*'s general probable-cause requirement for retaliatory arrest claims. Sylvia's case does not.

In short, the district correctly held that the independent intermediary doctrine does not apply. It is simply irrelevant to the availability of Sylvia's First Amendment claims. This Court should affirm the district court's judgment and let Sylvia's claim against Appellants proceed.

## CONCLUSION

The district court correctly denied Appellants qualified immunity. Sylvia not only alleged a violation of a constitutional right; she also showed that this right is not precluded by probable cause, and that it is clearly established. Furthermore, because there is no need to consider probable cause in Sylvia's case, there is also no need to determine whether it was ascertained through an independent intermediary. The district court's judgment should be affirmed.

Dated: July 7, 2021             Respectfully submitted,

/s/ Anya Bidwell
Anya Bidwell (TX Bar No. 24101516)
Patrick Jaicomo (MI Bar No. P75705)
William Aronin (NY Bar No. 4820031)
INSTITUTE FOR JUSTICE
901 North Glebe Rd., Suite 900
Arlington, VA 22203
(703) 682-9320
abidwell@ij.org
pjaicomo@ij.org
waronin@ij.org

*Counsel for Plaintiff-Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of July, 2021, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system.

/s/ Anya Bidwell
*Lead Counsel for Plaintiff-Appellee*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with type-volume limits of Federal Rule of Appellate Procedure 32(a)(7) because it contains 7,598 words, as determined by the word-count function of Microsoft Word 2016, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2.    This brief document complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Georgia font.

/s/ Anya Bidwell
*Lead Counsel for Plaintiff-Appellee*

## CERTIFICATE OF ELECTRONIC COMPLIANCE

I hereby certify that, in the foregoing brief filed using the Fifth Circuit CM/ECF document filing system, (1) the privacy redactions required by Fifth Circuit Rule 25.2.13 have been made, (2) if paper copies are requested, the paper copies will be an exact copy of the electronic submission, and (3) the document has been scanned for viruses with the most recent version of Webroot Secure Anywhere Endpoint Protection v9.029.62 and is free of viruses.

/s/ Anya Bidwell
*Lead Counsel for Plaintiff-Appellee*